## NEELY ET AL. *v.* INDIANA EMPLOYMENT SECURITY BOARD ET AL.

[No. 19,628. Filed March 14, 1962.]

*John A. Cody, Jr.,* and *G. Kenneth Hay,* both of New Albany, for appellants.

*Edwin K. Steers,* Attorney General, and *Keith Campbell,* Deputy Attorney General, for appellees.

PFAFF, J.—This action was instituted originally by appellants before the Liability Referee of the State Employment Security Board on a protest of appellants to the assessment for additional contributions under the Indiana Employment Security Act.

Appellants were engaged in three separate businesses, one of which is the protestant firm, the M. & M. Construction Service. This M. & M. Construction Service is engaged in the business of bulk hauling of road building materials. They owned thirteen trucks and had approximately eleven regularly employed truck drivers. When they contracted for a hauling job requiring more trucks and drivers, they would then contact other individuals who had trucks to help haul the materials. The extra drivers were paid on the basis of the tonnage hauled.

The undisputed evidence before the Liability Referee further revealed that appellants had no right to control the activities of the extra drivers in respect to the routes they were to take; the hours they worked; or the amount of hauling they were to accomplish each day. Appellant Harry T. Neely further testified that he never exercised any control over the extra drivers except to tell them where to report.

The appellants had a written agreement with the extra drivers for approximately sixty days in the year 1959. This written lease agreement was in compliance with directions received from a State Policeman. The officer later told appellants that he was wrong when he informed them that it was proper to have such lease agreement. The written lease agreement provided in part as follows:

"(a) Lessee assume full responsibility for operation of above described equipment.
"(b) The Lessee agrees to furnish such identification cards as may be necessary to inform the general public that said equipment is being operated by, for, and under the control of Lessee.
"(c) The Lessee shall see that the vehicle so leased shall bear a proper registration card as issued by the Public Service Commission of Indiana. . . ."

After the sixty day period of the written lease agreement expired, appellants returned to a verbal operating arrangement with the extra drivers. Appellant Harry T. Neely gave undisputed testimony as follows as to the difference between the verbal arrangement and the written agreement:

"Q. Is your verbal arrangement with the alleged independent contractors approximately the same as what the written arrangement was?

"A. In a broad sense, yes.

"Q. What way does it differ?

"A. In the lease here under paragraph (e) where it says that they furnish their own fuels, and lubes, and so forth, we don't have anything like that in the verbal contract other than that we will use them.

"Q. In what other way? The alleged independent contractors, is it true that they do furnish their own fuel?

"A. They furnish their own fuel.

"Q. In this written agreement you furnished the fuel?

"A. I don't think so.

"Q. O.K. The lessor furnishes their own fuel all the way through?

"A. Yes, sir.

"Q. In the written and under the present oral agreement?

"A. Yes.

"Q. What other ways does the oral agreement differ?

"A. It is quite a bit different in that I just call them up and tell them I am going to use them. I don't tell them that you have got to do this or that, I don't stipulate that they agreed to do so and so as it is in this particular lease here.

"Q. In the written agreement it provides that the leased equipment will be for a period of thirty days. Is there any such arrangement now for a definite period of time?

"A. No, sir.

"Q. On the written agreement it provides that the written agreement will be renewed for an equal amount of thirty days from time to time. Was there every anything in writing or any extensions on the written agreement when they did sign it?

"A. No, sir."

The extra drivers would in some instances operate under appellants' P. S. C. I. permit while, in other instances, under a permit belonging to someone else.

The extra drivers carried their own public liability and property damage insurance and also their own workmen's compensation insurance. The appellant also testified that he did not have the right or power to discharge these drivers and that he would have had to contact the owners of the trucks if the occasion arose.

The Liability Referee for the Indiana Employment Security Board found that the extra drivers were employees of appellants and that appellants were subject to contributions for such employees under the Indiana Employment Security Act. The appellants appealed the referee's decision assigning as error that the decision is contrary to law.

The applicable section of the Act (§52-1532, Burns' 1951 Replacement) reads as follows:

" 'Employment' defined.—'Employment,' subject to the other provisions of this section, means service, including service in interstate commerce performed for remuneration or under any contract of hire, written or oral, express or implied.

"(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the board that (A) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and (B) such individual, in the performance of such services is engaged in an independently established trade, occupation, profession or business; or is an agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort.

"(b) Such term shall include services performed for remuneration by an officer of a corporation in his official corporate capacity."

The primary question here presented for decision is whether the services of such extra truck drivers constitute employment within the meaning of the above section of the Act. To determine this question, it must first be ascertained whether the extra drivers were free from the control or direction of appellants over the performance of their services. The meaning of the words "control or direction" was discussed by this court in the case of *News Publishing Co.* v. *Verweire* (1943), 113 Ind. App. 451, 457, 49 N. E. 2d 161, wherein the court stated:

"We are of the opinion that in enacting cl. (A) of §52-1502 (e) (5), *supra*, the Legislature, in using the term 'control or direction,' intended the meaning given to these words in Webster's New International Dictionary. 'Control' is there defined as: '(4) To exercise restraining or directory influence over; to dominate; regulate; hence to hold from action; to curb; subject; overpower.' 'Direction' is defined as: '(3) That which is imposed by directing; a guiding or authoritative instruction; prescription; order; command.'"

Applying this meaning to the factual situation of the instant case, as set out above, we must conclude that the appellants had neither the right to control or direct the performance of the services of the extra drivers. The evidence before the Liability Referee is susceptible to only one conclusion or inference, and that is that appellants did not have the right to control or direct the extra truck drivers in the performance of their services. Appellant Harry T. Neely gave undisputed testimony that the only thing he had the right to do in reference to the

drivers was to tell them where to report. The extra drivers were free to perform the services contracted for in such manner and method as they saw fit.

The fact that some of the extra drivers were operating with appellants' P. S. C. I. decal on their trucks is not in and of itself sufficient to make their services constitute employment. The appellees to support their position that the extra drivers were operating under appellants' P. S. C. I. permit should be controlling in determining whether their services constitute employment cite the case of *Bates Motor Transport Lines, Inc.* v. *Mayer, Admx.* (1938), 213 Ind. 664, 14 N. E. 2d 91. We are of the opinion, however, that the above case is distinguishable from the instant case because it was a tort action while in the present case employment and the exceptions thereto are specifically spelled out by the statute previously set out in this opinion.

The second factor which must be determined in order to ascertain if the services of the extra drivers constitute employment is whether or not these individuals were engaged in an independently established business, trade or occupation. This court in the case of *State Emp. Security Board* v. *Motor Express* (1946), 117 Ind. App. 113, 116, 69 N. E. 2d 603, stated:

> "It seems equally clear that the individuals who contracted with appellee were engaged in an independently established business. They owned their own equipment, they had full control of their own employees and they performed services for persons other than appellee."

This court in a later case, *Alumiwall Corp.* v. *Ind. Emp. Sec. Board* (1960), 130 Ind. App. 535, 541, 167 N. E. 2d 60, again discussed this question and the court stated:

"The second standard is whether or not such services were an independently established trade, occupation, profession or business. Again it would seem that such applicators were engaged in an independent business. They owned and supplied their own tools and equipment, hired and fired their own helpers, were free to work or not work as they saw fit, and could perform the same services for other than appellant if they so dsired."

Applying these guides to the facts in the instant case, we find that the extra drivers did furnish their own equipment (the trucks) and that the trucks were owned either by the driver or by someone else. We also find that the owners of the trucks operated by the extra drivers had the power to fire the drivers and that these drivers did perform services for persons other than the appellants. Therefore, we must conclude that the extra drivers were engaged in an independently established business.

For the reasons stated above, the decision of the Liability Referee is hereby reversed.

Kelley, P. J., and Bierly, J., concur.

Gonas, J., dissents with opinion.

### DISSENTING OPINION

GONAS, J.—I have conferred with my learned colleagues on this case which concerns the historic unemployment compensation legislation.

I cannot agree with the decision by the majority of the court. Whether or not the relationship of employer-employee exists is a fact question which is beyond our province. Questions of facts which are determined by the Liability Referee in this class of cases are binding upon us. Burns' Ind. Stat. §52-1542 k (1961 Supp.) The Referee found specifically that the

company retained the right to direct and control the performance of the truck drivers herein involved. This finding is tantamount to the existence of the employer-employee relationship. In my view, the evidence sufficiently supports this finding.

Appellant testified as follows:

"Q. Even when your drivers, your employees, and the alleged independent contractors haul for Atkins, they are hauling on your Public Service Commission permit, is that correct?"

"A. In the biggest part of the instance, yes. . . ."

From this and other testimony, the Liability Referee undoubtedly drew an inference that the hauling was done by the employees in question under the Public Service Commission Permit which was issued to the appellant. The record does not show that the employees in question own a permit. Therefore, the Liability Referee had a proper foundation for finding these workmen to be the employees of appellant.

Appellant, in his own testimony, further stated, that he received a check about the 15th of each month from a company with which he had contracted to perform certain services, and that he paid his employees, including the ones in dispute, from this check. This is further evidence that these workmen are employees of appellant. Thus, the employees in question should be treated as the other employees of the company for the purpose of the Employment Security Act. Burns' Ind. Stat. §15-1532.

The majority opinion asserts that the evidence is susceptible to only one conclusion or inference. However, their conclusion is different from that reached by the Liability Referee, and I cannot concur in the conclusion reached by the majority. Besides, evidence

merely serves as a basis for reasoning in this class of cases, and it is inevitable that inferences will be made of many facts without direct proof thereof.

The legislature intended, by enacting this statute that every employer contribute an amount to the Unemployment Fund based on the number of his employees in fact. Even prior to the days of Blackstone in England, and Kent in the United States, laws were intended to be uniformly applied and no member of any class was to be excepted. So it is with our Employment Security Act; all employers are bound to contribute, for the benefit of their employees, to the Unemployment Compensation Fund, unless specially exempted by our statutes.

In view of the intent of the legislature, and the purpose of this Act, we should permit no employer to give the appearance that he contributes his just share by the use of a subterfuge.

The majority opinion ignores the facts as found, and substitutes their judgment for that of the Liability Referee. Thus, an employer is permitted to escape contributing his statutory share into the Unemployment Fund.

I respect the findings made by the Liability Referee, and submit that his decision should be affirmed.

NOTE.—Reported in 180 N. E. 2d 549.