BESSIE KIRBY, D/B/A KIRBY BEAUTY SALON, GLADYS HELL-MICH, D/B/A LITTLE CHARM BEAUTY SALON *v.* THE INDIANA EMPLOYMENT SECURITY BOARD, MAX WRIGHT, GLENN RAY, ALBERT L. SUMMERS, RICHARD O. RISTINE AND WILLIAM H. ANDREWS, JR. MEMBERS OF THE BOARD; JOHN F. COPPES, EX OFFICIO SECRETARY OF THE BOARD, FRANK H. WADSWORTH, LIABILITY REFEREE FOR THE INDIANA EMPLOYMENT SECURITY BOARD.

[No. 2-373A66.  Filed December 10, 1973.]

*Raymond B. Rolfes, William H. Robbins, Rolfes, Garvey, Walker & Robbins,* of Greensburg, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellees.

HOFFMAN, CJ.—This is a consolidated appeal by Bessie Kirby, doing business as Kirby Beauty Salon (Kirby), and Gladys Hellmich, doing business as Little Charm Beauty Salon (Hellmich), for a judicial review of decisions rendered by a Liability Referee of the Indiana Employment Security Board (Board) that they are liable for past contributions under the Indiana Employment Security Act.

Each appellant owns a licensed beauty shop located on the premises of gift shops which they respectively operate, but neither is a licensed beauty operator. It is their practice to lease booth space to licensed operators, with appellants supplying the necessary fixtures and large equipment and the operator supplying her own hand tools. Under the terms of the agreements, each operator agrees to adhere to professional standards of work, and to use the leased equipment with due care.

The operators pay a straight percentage of their gross receipts as rental for the space. Appellants withhold no social security or other taxes, do not have seniority rules, vacations, or sick leave, and pay no workmen's compensation for the operators. The operators make their own appointments and set their own hours, receive payment from their customers and pay to appellants a percentage of their gross receipts each week. The agreement is terminable on 30 days' written notice by either party.

Both Kirby and Hellmich were served by the Board with a notice and demand for payment of contributions as employers, plus interest and penalties, which had accrued from approximately 1968 to 1972. Each appellant protested to her individual notice and demand, and requested a hearing on such protest. The two cases were decided separately by a

Liability Referee; however, Kirby and Hellmich join in this appeal from their respective adverse rulings.

The Act provides for payments to certain unemployed persons, which are financed through contributions required of those who are considered employers. Under the Act, the contributions "accrue and become payable from each employer for each calendar year in which it is subject to this article * * * with respect to wages paid during such calendar year * * *." IC 1971, 22-4-10-1, Ind. Ann. Stat. § 52-1534 (Burns Cum. Supp. 1973)[1] Kirby and Hellmich must come within this portion of the Act to be liable at all for contributions under the Act. Necessarily, then, a construction of this portion of the Act either subjecting them to, or excluding them from, its terms must be made.

When construing a statute, the primary objective is to ascertain and effectuate the general intent of the Act, if possible. *Engle* v. *City of Indianapolis* (1972), 151 Ind. App. 344, 279 N.E.2d 827, 29 Ind. Dec. 602 (transfer denied). In the case at bar, the intent of the Act is best discovered by first examining the definitions the Legislature has supplied for the terms used in the Act. These definitions are binding on the court in making its construction of the Act, unless they are repugnant to the manifest intention of the Legislature. *Town of Kewanna etc.* v. *Ind. Emp. Sec. Bd.* (1961), 131 Ind. App. 400, 404, 171 N.E.2d 262.

The above quoted section of the Act requires contributions from "employer." The relevant portion of the Legislature's definition of this term reads as follows:

"ARTICLE VII—Employers

" 'Employer' * * * defined.—Prior to January 1, 1972, 'employer' means any employing unit which * * * has or

---

1. All sections of the Act cited herein were amended during the time period for which the contributions were assessed. However, we are not presented with the issue of what effect, if any, the amendments have had on the statutes, and, we have used no language changed by the amendments in our construction of the statute.

had in employment, and/or has incurred liability for wages payable to, four [4] or more individuals, * * * and subsequent to December 31, 1971, * * * 'employer' means any employing unit which * * * has or had in employment, and/or has incurred liability for wages payable to, one [1] or more individuals * * * or any employing unit which in any calendar quarter in either the current or preceding calendar year paid for service in employment wages of one thousand five hundred dollars [$1,500] or more. * * *" IC 1971, 22-4-7-1, Ind. Ann. Stat. § 52-1531 (Burns Cum. Supp. 1973).

Since liability for contributions under the first section of the Act quoted herein turns upon one's status as an employer, Kirby and Hellmich must fall within this definition to owe contributions under the Act.

Under the above definition, one may be an "employer" only if he has or had persons in his "employment." The term "employment", in its sense here pertinent, was defined by the Legislature in the Act as follows:

" 'Employment' defined.—'Employment', * * * means service * * * performed for remuneration or under any contract of hire, written or oral, expressed or implied.

"(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this article * * * irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the board that (A) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract of service and in fact; (B) such service is performed outside the usual course of the business for which the service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed; or is a sales agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort." IC 1971, 22-4-8-1, Ind. Ann. Stat. § 52-1532 (Burns Cum. Supp. 1973).

The Liability Referee who heard these cases found that the beauty operators working in Kirby's and Hellmich's shops

were in "employment" under subsection (a) of this definition by reason of a construction placed on the definition by Regulation 310 of the Board.

Such regulation deems beauticians to be in employment when working on a commission basis, even when furnishing their own instruments or other equipment. Since the section of the definition relied on by the Liability Referee states that "[s]ervices performed by an individual for remuneration shall be deemed to be employment * * *", the regulation must necessarily construe the commissions to be "remuneration."

This construction of the word "remuneration" by the Board's regulation is at first glance in accord with the Legislature's definition of the term, which reads:

> " 'Remuneration' defined.—'Remuneration,' whenever used in this act * * * unless the context clearly denotes otherwise, means all compensation for personal services, including * * * commissions, * * *." IC 1971, 22-4-4-1, Ind. Ann. Stat. § 52-1528 (Burns Cum. Supp. 1973).

Therefore, the commissions paid to Kirby and Hellmich must be "compensation for personal services" for them to be "employers" under the Act.

The word "compensation" has been defined as a *quid pro quo* for services rendered. *Matthews* v. *Board of Education* (1954), 31 N. J. Super. 292, 106 A. 2d 346. The words "personal services" have been defined as labor performed by an individual for the benefit of another. *Van Zandt* v. *Fort Worth Press* (1962), 359 S. W. 2d 893. Taken together, the words describe a situation where workers perform services directly or indirectly *for* another, receiving a *quid pro quo* in return.

This construction of the words is in consonance with the Legislature's designation in its definition of "employment" that the performance of services in the usual course of business and the existence of direction and control over workers are *indicia* of an employment relationship. Thus, it must be

concluded that the Legislature has indicated its intent that one cannot be an "employer" under the Act unless he pays compensation to others for services rendered directly or indirectly to him.

In the instant case, no services were rendered directly or indirectly to Kirby or Hellmich by their beautician-lessees, and they paid out no compensation for any such services. The only contact that Kirby and Hellmich had with the services rendered in their shops was that the rental charge paid to them was based on the amount of services that the lessees rendered to others. In light of the above discussion, the arrangement under consideration here is more indicative of a lease of equipment and space that provides for payments to be determined by the lessees usage of them, than of an employer-employee relationship. Accordingly, the exchange of money here at issue was not "compensation for personal services" as used in the Act, and, as a result, Kirby and Hellmich cannot be "employers" under the Act.

This same result is also reached by a consideration of the effect of a contrary construction of the statute. Since our Supreme Court has held that where more than one construction of a statute is possible, a court may be influenced by the consequences of one of those constructions,[2] we may consider the effects of a construction contrary to the one that has been reached.

One probable effect of a contrary construction would extend to many landlord-tenant relationships. Percentage rental agreement provisions similar to those under consideration here are common in business real estate leases, but it cannot fairly be said that the lessees under those leases are employees of the lessors, even though the lessors' income depends on the amount of work or sales of the lessees. A holding in the case at bar contrary to the

2. *State ex rel. Bynum* v. *LaPorte Superior Court No. 1* (1973), 259 Ind. 647, 291 N.E.2d 355.

construction that has been reached would arguably subject a large number of landlords to liability for employment security contributions on behalf of their lessees. Certainly, the Legislature intended no such result, and to subject Kirby and Hellmich to liability for contributions under the Act would counter that intent. While the letter of a statute may express a particular thing, it must be said that such is not within the statute if it is manifestly contrary to the spirit and intention of its framers. Furthermore, *Wanatah Stone Co.* v. *Ind. Emp. Sec. Bd.* (1968), 142 Ind. App. 590, 236 N.E.2d 514, and *Neely et al.* v. *Indiana Employment Sec. Bd.* (1962), 133 Ind. App. 185, 180 N.E.2d 549, have held that an employer-employee relationship did not exist under the Act in similar factual situations.

For the reasons above stated, the decisions of the Liability Referee of the Indiana Employment Security Board are contrary to law, and the same are hereby reversed.

Reversed.

Lowdermilk, J. and Staton, J., concur.

NOTE.—Reported at 304 N.E.2d 225.