**Ovell EDWARDS, Jr., Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 183S32.

Supreme Court of Indiana.

Aug. 9, 1984.

A. Martin Katz, Katz, Brenman & Angel, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979) and sentenced to twelve (12) years imprisonment. His direct appeal presents three (3) issues for review:

(1) Whether the trial court erred in denying his motion for mistrial predicated upon a police officer's reference to "mug shots";

(2) Whether the trial court erred in admitting into evidence, over Defendant's objection, testimony by the complaining witness of statements made by Defendant at the time of the offense;

(3) Whether the trial court erred when it denied Defendant's motion for mistrial predicated upon a comment made by the Prosecutor during closing argument that the Defendant had previously beaten two "murder raps."

The record disclosed that on July 9, 1982, at approximately 3:00 a.m., Edward Skinner was walking home from his girlfriend's apartment carrying a radio which he had purchased for $150.00 when he saw the Defendant, a long-time acquaintance. Skinner crossed the street to talk to Defendant, who subsequently asked Skinner if he could look at the radio and inquired about its cost. Thereafter, Defendant drew a pistol and told Skinner, "either give up the radio or get popped." Skinner gave Defendant the radio, walked away, and reported the robbery to police, who subsequently arrested Defendant.

The Defendant testified that Skinner approached him and attempted to purchase drugs from him on credit. When he would not sell Skinner the drugs on that basis, Skinner gave him the radio, as collateral, in exchange for the drugs. Defendant was to hold the radio for two days so that Skinner could redeem it. The two drank some wine and parted company.

ISSUE I

During the testimony of Police Officer Thomas Papadakis, the following exchange between the Prosecutor and the witness occurred:

"Q. After taking Mr. Skinner's formal statement, Detective what, if anything else, did you do with regards to this particular incident?

A. I had showed him some photographs of Gary Police mug shots just to see—"

At this point Defense counsel objected and moved for a mistrial, which motion the trial court denied. The jury was then admonished to disregard the above question and answer.

Defendant assigns as reversible error the trial court's denial of the mistrial motion, arguing that the reference to "mug shots"

was so prejudicial that it could not be corrected by the court's admonishment. He relies primarily upon *Miller v. State*, (1982) Ind., 436 N.E.2d 1113 and *Fox v. State*, (1980) Ind.App., 399 N.E.2d 827; however, both cases are readily distinguishable from the one at bar. In *Miller*, this Court reversed a rape conviction because of "two evidentiary harpoons which were deliberately thrust and, in the context of the case had a very high potential for influencing the verdict[.]" *Miller*, 436 N.E.2d at 1113. One of those evidentiary harpoons occurred when the State introduced a photograph of the appellant which was obviously a police photograph and which the prosecutrix identified as a photograph she had selected from an array she had been shown by the police. In the case at bar, however, no photograph of Defendant was introduced, and, in fact, the police officer said nothing which would indicate to the jury that Defendant's photograph was in police files. It is common knowledge that routine police investigation involves the display of police photographs which are on file.

In *Fox*, a police officer stated that the victim of the crime had looked through the police "mug files" and that he, the police officer, could identify the photograph chosen by the victim from the "mug file" which had been brought into the courtroom and placed in front of the officer. The Court of Appeals stated that in some cases it may be reversible error for the prosecutor to refer to police "mug files" or "mug shots," and in that case held that the trial court committed reversible error by refusing to strike the improper evidence and admonish the jury. In the case at bar, however, the trial court did admonish the jury to disregard the statement by the police officer.

■ At most, the Officer's statement might have indicated to the jury that Defendant had had some prior police involvement. The damage, then, is the knowledge that Defendant had engaged in or was suspected of having engaged in other illegal conduct. However, by his own admission, Defendant was, and had been, engaged in the illegal sale of drugs. Under the circumstances of this case, Defendant has failed to show that he was harmed by the Officer's reference to "mug shots." *See Jackson v. State*, (1984) Ind., 462 N.E.2d 63, 68, and cases cited therein.

## ISSUE II

■ During Skinner's testimony the State questioned him about statements made by the Defendant during the commission of the robbery, and defense counsel objected. He explained to the trial court, out of the hearing of the jury, that he believed that Skinner would testify that Defendant had told him that he had beaten two "murder raps" and argued that such testimony would have no probative value and would be highly prejudicial. The objection was overruled, and Skinner testified that Defendant told him, when he confronted him with the gun, that in the time which had intervened between this and their last previous meeting, he had become "vicious" and had beaten two "raps." The trial court ruled that the utterances were admissible as part of the *res gestae* of the crime, and we agree. Even prejudicial utterances which are made during the commission of an offense are admissible. *Beasley v. State*, (1983) Ind., 452 N.E.2d 982, 984; *Taylor v. State*, (1982) Ind., 438 N.E.2d 294, 297.

Moreover, the testimony was proper in that it was relevant to prove an element of the crime, i.e. that Skinner was "in fear" when he surrendered his radio to the Defendant. Defendant had told him either to give up the radio or "get popped." Skinner thought that his long-time acquaintance was joking, but when Defendant stated that he had become "vicious" and had beaten "two raps," Skinner was induced to let go of the radio because he was "in fear of getting shot over a radio." Hence, Defendant appears to have been reinforcing his threat to kill Skinner if he did not relinquish the radio.

## ISSUE III

During the State's closing argument, the Prosecutor made the following statement:

"Then, suddenly, Mr. Ovell—Mr. Edwards is taking a lot more interest in the radio, 'How much did it cost?'; '$150.00', he said. Then he began to explain to Mr. Skinner, 'I guess you haven't heard about how vicious I have become since you have been out of town. Guess you haven't heard how I have become since I walked on two murder raps.' "

Defense counsel objected and moved for a mistrial. Following a discussion outside the hearing of the jury, the trial court sustained the objection, denied the motion for mistrial and gave the following admonition to the jury.

"Members of the jury, I believe the recall of the evidence would indicate the witness' testimony was that the defendant said, 'I had beaten two raps', two raps, but no indication what the charges were in those cases. With that admonition, you are to disregard any reference, and you should recall the evidence yourselves in this case as to what was actually testified to, remembering at all times the statements of counsel are not evidence."

Defendant argues that the trial court erred in denying his motion for mistrial in that the comment that Defendant had "walked on two *murder* raps" was not based upon any evidence before the jury, was highly prejudicial and inflammatory, and could not be cured by the admonition which was given.

██ The denial of a motion for mistrial will be reversed only upon a showing of an abuse of discretion by the trial court. The case must be reversed only if the statement was so prejudicial as to have placed the defendant in "a position of grave peril to which he should not have been subjected." *Morgan v. State*, (1981) Ind., 419 N.E.2d 964, 967. The declaration of a mistrial is an extreme action which is warranted only "when no other action can be expected to remedy the situation," *Gambill v. State*, (1982) Ind., 436 N.E.2d 301, 304, and, as a general rule, if the jury is admonished by the trial court to disregard a statement at trial, no reversible error will be found.

*Ward v. State*, (1982) Ind., 438 N.E.2d 966, 967; *Page v. State*, (1980) Ind., 410 N.E.2d 1304, 1307.

██ The question of whether Defendant was so prejudiced that the admonishment could not cure the error is one that must be determined by examining the facts of the particular case. The burden is on defendant to show that he was harmed and placed in grave peril by the denial of the motion. *White v. State*, (1971) 257 Ind. 64, 77–78, 272 N.E.2d 312, 319–20. Whether a prosecutor's statement results in subjecting a defendant to grave peril is determined by the probable persuasive effect of the statement upon the jury's decision. *Maldonado v. State*, (1976) 265 Ind. 492, 499, 355 N.E.2d 843, 848.

██ In the case at bar, while recounting to the jury the Defendant's method of committing this robbery, the Prosecutor overstated the evidence. She was not, however, disclosing evidence against the Defendant, but rather was retelling what the victim had said that Defendant had done to induce him to part with his property. Although it was error for the Prosecutor to expand the victim's testimony from "raps" to "murder raps," there is no reason for the jury to infer that the Defendant had prior murder acquittals. His statement, whether true or false, was apparently made for the sole purpose of convincing Skinner to give up his radio. Moreover, there is no indication that the Prosecutor intentionally expanded Skinner's testimony. In her opening argument she had stated that Skinner would testify that Defendant had told him that he had beat "these two murder raps," and, after realizing the error, she, too, cautioned the jury as follows:

"Ladies and gentlemen, I will again ask you to keep in mind the purpose of a closing argument. This is merely argument, and again I will ask you on behalf of the State of Indiana to base your verdict upon the evidence as you have heard it, and nothing which either I or Mr. Wolter would say during closing argument."

Under all of the circumstances of this case, we hold that the admonitions were sufficient to cure prejudice, if any, which resulted from the Prosecutor's comment.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.