Geraldine HILL, Appellant,

v.

STATE of Indiana, Appellee.

No. 184S33.

Supreme Court of Indiana.

Oct. 3, 1986.

Daniel L. Bella, Appellate Public Defender's Office, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Kenneth P. Williams, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Geraldine Hill was convicted of murder, Ind. Code § 35-42-1-1 (Burns 1979 Repl.) and sentenced to thirty-one years in prison. This direct appeal presents five issues:

(1) Whether contradictory and inconsistent statements of two eyewitnesses renders their testimony inherently unreliable and insufficient to sustain a conviction;

(2) Whether the State met its burden of disproving the theory of self-defense;

(3) Whether the cumulative effect of prosecutorial misconduct denied appellant a fair and impartial trial;

(4) Whether references to Hill's lack of a license to carry the gun she used to commit the crime required a mistrial, and

(5) Whether a spectator's prejudicial outburst during closing arguments required a mistrial.

These are the facts which tend to support the trial court's judgment. On December 24th, 1982, appellant, armed with a gun, walked to a garage where her estranged husband, Robert Hill, owned a workshop. Although Robert was four days late on his court-ordered child support payments, Geraldine's purpose on this visit was to request an additional forty dollars to purchase shoes as a Christmas present for their son. Geraldine shot and killed Robert during an argument about his financial obligations.

Two eyewitnesses, Lee Cowart and Ray Williams, testified on behalf of the State. Cowart testified that he was walking through the parking lot adjacent to the victim's garage when he heard a man and woman arguing in the garage about twenty to twenty-five feet away. After hearing one or two shots, he turned to watch the incident. Several more gunshots were fired in rapid succession. Cowart observed appellant shooting the victim with a small handgun. Cowart testified that she backed up as she continued firing. When the last shot was fired, the victim was lying on the ground.

Ray Williams testified that he was walking down the alley past the garage when he heard a man and woman arguing in the garage. Williams stopped six or seven feet from the garage to observe the incident. The woman, whom he identified in court as appellant, wanted money to buy a Christmas gift. The victim responded that he did not have any money and asked her to leave. Williams testified that Geraldine left the garage, went to a car, and put something in her righthand coat pocket. She kept her hand in the pocket as she walked back to the garage. Once at the garage, she took her hand out of the pocket and shot the victim with a small gun. She fired again, and the victim fell to the floor. Then the defendant started shooting him where he lay; she turned around, smiled, and left. Williams did not see any weapon in the victim's hands nor did he hear the victim threaten defendant. He stated that the defendant was six feet away from the victim when the first shot was fired, four feet at the second shot, and three to four feet when the defendant fired the remaining shots as the victim lay on the ground.

A security guard for a nearby food store, Ben Garner, was directing traffic in the parking lot when he saw appellant firing a weapon at a man in the garage. He heard four or five shots fired rapidly. After the victim had fallen to the ground, the defendant fired two more shots in his direction. When the woman started to leave across the parking lot, Garner apprehended her and retrieved a gun from her righthand coat pocket. When he examined the cylinder of the gun, he found six spent cartridges inside.

## I. Sufficiency of Evidence

Appellant argues the evidence is not sufficient to sustain the murder conviction because contradictions and inconsistencies in the testimony of two eyewitnesses render their testimony inherently unreliable. She maintains that Cowart's testimony presented different versions of the shooting incident and included contradictions which challenge the truthfulness of his testimony. Appellant also claims that Wil-

liams' testimony had internal inconsistencies and contradicted Cowart's testimony.

As we previously stated in *Rodgers v. State* (1981), Ind., 422 N.E.2d 1211, 1213:

Defendant's contention strikes directly at the credibility of witnesses, a matter which with rare exceptions is solely the province of the jury. Only when this Court has confronted 'inherently improbable' testimony, or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity', have we impinged on a jury's responsibility to judge the credibility of witnesses. [Citations omitted.]

Counsel has labored mightily to outline discrepancies in the description of distances, number of shots, location of the observers, the weather, and the like, but none of these claims do much to undermine the fact that three independent eyewitnesses gave similar descriptions of Mrs. Hill's murder of her husband. The extent to which these accounts differed did not preclude a finding by the jury that appellant was guilty beyond a reasonable doubt. *Scott v. State* (1981), Ind., 426 N.E.2d 1298.

## II. Self-Defense

Appellant argues that the State did not sustain its burden to disprove her assertion of self-defense, which was corroborated by a fourth eyewitness' account of the incident.

Defense witness Kim Darrington also saw Robert and Geraldine arguing about support money. She testified that Robert started "looking crazy like a mad dog" and approached Geraldine with a hammer held upright in his hand. Geraldine then fired a shot. Darrington testified that she heard only three or four shots because of the boisterous crowd of two hundred people who were watching the incident. Darrington stated that she never saw appellant stand over the victim's body and fire more shots after he fell.

Appellant testified on her own behalf. She and her husband had separated several times since their marriage some twenty years earlier. Over the course of the years, she had been physically abused by her husband and sustained various injuries. The couple was legally separated in 1971, but they were never divorced. On December 2nd, 1982, she sought and received court-ordered support to commence on December 20th; Robert did not comply. On December 24th she telephoned Robert to ask why he had not made the support payment; he hung up. Appellant then walked over to the garage to ask only for money to buy a gift for their son. Appellant explained that she always carried a gun for protection because the neighborhood was unsafe. She testified that when Robert refused her request, she threatened to have him arrested the following Monday for nonsupport. Geraldine stated that Robert then became very angry, picked up a hammer, and threatened, "Bitch, you won't be living by Monday." She then fired the first shot and kept on firing because her husband kept walking towards her despite the shots. She stopped shooting when he fell. Of the four independent witnesses, Darrington was the only one who reported seeing the decedent holding a hammer.

The theory of self-defense operates as a complete defense when the asserter: (1) acted without fault, (2) was in a place where she had a right to be, and (3) was in real danger of death or great bodily harm, or in such apparent danger as to cause the asserter, in good faith, to fear death or great bodily harm. *Davis v. State* (1983), Ind., 456 N.E.2d 405. Once the defendant raises self-defense, the State has the burden to controvert the assertion by negating one of these elements beyond a reasonable doubt. *Jones v. State* (1986), Ind., 491 N.E.2d 999. The State may satisfy its burden by affirmatively showing appellant did not act in self-defense or by relying upon the sufficiency of the State's evidence in chief. *Wade v. State* (1985), Ind., 482 N.E.2d 704. Whether the State has disproved appellant's claim of self-defense is a question of fact for the jury to determine. *Davis*, 456 N.E.2d 405.

In this case, the State presented sufficient evidence to negate appellant's

claim of self-defense. Even assuming Geraldine reasonably feared that Robert would seriously injure her, he was no longer a threat when he fell to the ground, yet the evidence showed appellant continued firing shots. The jury obviously concluded that the degree of force exercised by appellant exceeded the bounds of justifiable force. Ind. Code § 35-41-3-2 (Burns 1979 Repl.).

### III. Prosecutorial Misconduct

■ Appellant argues that the cumulative effect of several instances of prosecutorial misconduct deprived her of a fair trial. To determine whether the prosecutor has engaged in misconduct during the trial, we first determine whether the prosecutor engaged in misconduct by referring to case law and the Disciplinary Rules of the Code of Professional Responsibility. If misconduct has been established, then we must determine whether the misconduct, under the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

■ The individual effect of the alleged errors were not so inflammatory or prejudicial as to place defendant in a position of grave peril. *Hedges v. State* (1982), Ind., 443 N.E.2d 62. Moreover, the record does not indicate repeated instances of misconduct which evidence a deliberate attempt to improperly prejudice defendant. *Murray v. State* (1982), Ind., 442 N.E.2d 1012. In some of the instances of alleged misconduct, defendant offered no objection. As for the majority of the incidents cited, the trial court was scrupulous in giving an admonition or instruction, in striking the objectionable remark from the record, sustaining defendant's objection, or prohibiting further testimony. Given the nature of the complaints there is every reason to regard the trial judge's actions as adequate to cure any damage that had been done.

*Ashford v. State* (1984), Ind., 464 N.E.2d 1298. We mention several of the incidents for purposes of illustration.

*Implication that Defense Fabricated Testimony.* The claim of fabrication is based upon questions the prosecutor addressed to a defense witness and the defendant. During direct examination, Kim Darrington testified that the victim approached defendant holding a hammer in his hand. The prosecutor cross-examined:

Q. Isn't it a fact that you only came up with the story about the hammer after you went to [defense counsel's] office and discussed the case with him?

A. He asked me what happened and I told the truth.

Defense Counsel did not object at this time.

Appellant later testified during direct examination that a few months prior to the shooting her son told her about a shooting incident between two teenage boys at school. To prevent her son from becoming similarly involved, she removed the bullets from her gun and hid them in the pocket of one of her jackets. When she left to speak with her husband at his garage, she did not remember that the bullets were in the coat she wore. When officer Garner apprehended appellant there were nine bullets in her coat pocket and six spent shells in the gun. The prosecutor asked defendant:

Q. Could you tell me how you take nine bullets out of a six-shot revolver?

A. I didn't know there were nine bullets.

Q. You sat here during the course of this trial, did you not?

A. Yes.

Q. You heard Ben Garner testify that he took nine bullets out of your pocket?

A. I didn't know there were nine at that time.

Q. But you can't take nine bullets out of a six-shit [sic] revolver, can you?

A. No.

Q. Now, isn't it true that you and your attorney got together and made this up to justify—

[Defense Counsel]: You know, this is about the last shot I am going to take from [the prosecutor] on this matter.

[Court]: What is the objection?

[Defense Counsel]: My objection is he is impuning [sic] my integrity. I resent that. I have practiced in the community 23 years and I think that Your Honor knows better than that.

[Court]: I will sustain an objection to the question.

[Defense Counsel]: I want [the prosecutor] admonished at some point, at the bench or otherwise.

[Court]: All right. Direct your questions to the witness, conversations with her son or conversations with Counsel are outside of the scope of your cross-examination.

Q. Isn't it true that you fabricated the incident about taking the bullets out of your gun to justify in front of the jury why you had the bullets in your pocket at this time?

A. No.

*Prosecutor's Comments as Evidence.* Appellant argues that on several occasions the prosecutor used his comments to present evidence to the jury. One act of misconduct is claimed when the prosecutor made a contradictory comment about appellant's response to a question during redirect examination:

Q. Mrs. Hill, were you ever shown any of the pictures that had been introduced into evidence in this case marked State's Exhibits 1 through 3? Any of the pictures that have been introduced into evidence during the course of the trial?

A. No.

[Prosecutor]: Objection, Your Honor, she was shown the pictures.

During re-cross examination, the prosecutor's questioning of the defendant on this topic revealed that she was present during prior hearings in this case when the prosecutor placed these photographs on the defense table, but that defendant "dropped her head, and never looked at them."

The jury was charged with a final instruction which recited that the unsworn statements or comments of counsel for either party should not be considered as evidence in the case and that the jury should determine the facts from the testimony and evidence admitted by the court and disregard any information derived from any other source.

*Prejudicial and Inflammatory Language.* Appellant argues that the prosecutor used inflammatory and prejudicial language when questioning a defense witness and the defendant. Williams testified that appellant had a "smirk" on her face while she was shooting Robert. The prosecutor asked defense witness Kim Darrington: "She had that smirk on her face when she was shooting Robert?" No objection was interjected by counsel. When questioning defendant, the prosecutor asked: "Isn't it true that as you were leaving the scene of the murder you—". The court sustained defense counsel's motion that reference to murder be stricken.

### IV. Evidence of Uncharged Misconduct

Appellant argues that the trial court erred by permitting testimony that appellant carried a gun without a license. She maintains that evidence of uncharged criminal conduct should not have been introduced.

Appellant testified during direct examination that she usually carried a gun with her when she walked the streets because the neighborhood was a dangerous area. During cross-examination, the prosecutor asked her: "When you left your house and went to Robert's garage on Christmas Eve of 1982 you were illegally carrying the pistol, weren't you?" Appellant responded affirmatively. When asked whether she had a permit to carry the gun, she answered no. During re-cross, the prosecutor asked: "You were illegally carrying the gun on Christmas Eve?" When defense counsel asked to approach the bench, the prosecutor responded that he would withdraw the question. Defense counsel insisted on a bench conference where he moved for a mistrial based upon the prejudicial allusion to a separate and distinct crime. He maintained that in a murder case it was

fundamental that no reference be made to the legality or illegality of the weapon. The court denied the motion because the same questions were asked during cross-examination and thus were already evidence. The court refused an admonition but indicated it would charge the jury by instruction. The court later gave a limiting instruction, although Hill's counsel indicated he did not desire an instruction inasmuch as there had been no admonition.

The determination to grant a mistrial is within the trial court's discretion. *Didio v. State* (1984), Ind., 471 N.E.2d 1117. Deference is accorded the trial judge who is in a more advantageous position than the appellate court to gauge accurately the surrounding circumstances of the event and its probable impact on the jury. *Lynch v. State* (1974), 262 Ind. 360, 316 N.E.2d 372. To succeed on appeal from the denial of such motion, the accused must demonstrate that the statement was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Asbell v. State* (1984), Ind., 468 N.E.2d 845; *Edwards v. State* (1984), Ind., 466 N.E.2d 452. If the jury is admonished by the trial judge to disregard the event upon which the motion is predicated or if other curative measures are taken, no reversible error will be found. *Ballard v. State* (1974), 262 Ind. 482, 318 N.E.2d 798. The granting of a mistrial is a dire action which should be resorted to only when no other remedy will rectify the situation.

The admission of testimony of another offense is error. However, when the offense is minor and unlikely to weigh appreciably against defendant, the resulting prejudice does not arise to the grave peril which would require a reversal. *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309. We are satisfied that whether Mrs. Hill had a permit to carry the pistol with which she killed her husband counted for virtually nothing in the jury's verdict.

### V. Spectator Outburst

Appellant argues that the trial court erred by not declaring a mistrial when a relative of the victim interrupted closing arguments with a prejudicial outburst.

During defense counsel's closing arguments, an unidentified spectator interrupted, "She killed my daddy." The court immediately admonished the audience to remove themselves from the courtroom if they could not remain silent. The court then admonished the jury to ignore the outburst. Defense counsel then proceeded with his closing arguments and made no motion for a mistrial.

The trial judge has discretion to determine whether the defendant has been prejudiced by a spectator's conduct. A mistrial should be granted when the defendant has been placed in a position of grave peril. *Palmer v. State* (1972), 153 Ind.App. 648, 288 N.E.2d 739; *Hoehn v. State* (1984), Ind.App., 472 N.E.2d 926. The outburst obviously was an emotional and prejudicial statement. However, the court acted swiftly to cure this error by admonishing the courtroom and the jury. We find no error.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.