**Ed RAYBURN and Fred Reece,
Appellants (Defendants Below),**

v.

**Darlus J. JOHNSON, Personal Representative of the Estate of Robert Johnson, Deceased, Appellee (Plaintiff Below).**

No. 93A02–8605–EX–158.

Court of Appeals of Indiana,
Second District.

March 24, 1987.

Patricia Goodspeed, Knightstown, for appellant Ed Rayburn.

Jerry W. Miller, Knightstown, for appellant Fred Reece.

Michael J. Tosick, Free, Brand, Tosick & Allen, Greenfield, for appellee.

SULLIVAN, Judge.

Ed Rayburn (Rayburn) and Fred Reece (Reece) appeal the decision of the Indiana Industrial Board awarding Darlus Johnson, as personal representative of the decedent Robert Johnson, compensation for the death of her husband. We affirm but re-mand for modification of the award in conformity with this opinion.

Rayburn was hired by Reece to remove timber Reece had purchased on land owned by James Wilds. Rayburn was frequently employed by Reece to perform similar jobs. Robert Johnson, an experienced logger, had been working with Rayburn for approximately eight months prior to the job on the Wilds property. On the first day of the job, Robert Johnson was killed by a falling tree. Rayburn was uninsured and Reece did not demand or receive a certification that Rayburn carried compensation insurance when he entered into his contract with Rayburn. Darlus Johnson filed her application for compensation with the Board and the Hearing Member awarded $166 a week for a period not to exceed 500 weeks to be paid in equal shares by Rayburn and Reece. Upon review by the full Board, the award was modified. The amount of the award was affirmed, but Rayburn was found to be primarily liable with Reece secondarily liable if execution against Rayburn were returned unsatisfied.

Reece's liability was premised upon Indiana Code 22–3–2–14 (Burns Code Ed. Repl.1986), which provides in pertinent part as follows:

"The state, any political division thereof, any municipal corporation, any corporation, partnership, or person, contracting for the performance of any work exceeding five hundred dollars [$500] in value by a contractor subject to the compensation provisions of this act [22–3–2—22–3–6] without exacting from such contractor a certificate from the industrial board showing that such contractor has complied with sections 5, 68 and 69 [22–3–2–5, 22–3–5–1, 22–3–5–2] of this act, shall be liable to the same extent as the contractor for compensation, physician's fees, hospital fees, nurse's charges, and burial expenses on account of the injury or death of any employee of such contractor, due to an accident arising out of and in the course of the performance of the work covered by such contract."

The agreement between Reece and Rayburn for the removal of the Wilds property timber was oral and called for payment of 15¢ per foot of timber removed. Reece paid Rayburn $3,200 approximately one month after the job on the Wilds property was completed. However, Reece testified that the sum paid Rayburn in March was compensation for several separate jobs and that only $413.55 of the $3,200 was intended as payment for the Wilds property job. Reece argues that the contract for the Wilds property job was severable from the contracts for the other jobs performed by Rayburn. He contends that the Wilds property contract, standing alone, was for less than $500 and therefore not within the ambit of I.C. 22–3–2–14.

■ Reece's argument is not without merit. However, there was evidence from which the Board could reasonably conclude that all of the jobs paid for by the $3,200 check were part of a single contract. The fact that all of the jobs were paid for by a single check supports this inference. Additionally, testimony by Rayburn concerning his dealings with Reece supports the Board's finding:

"Q  Do I understand that if [Reece] hires you to do four or five jobs, you get paid after the four or five jobs are over?

A  Yes.

Q  And is that what the situation was with respect to [the Wilds property job]? Was it part of a four or five job deal?

A  Yes, we done four—well, we done, I'd say four, maybe three or four jobs, something like that that time, maybe five. I don't know. After awhile it gets a little bit hard to keep up with stuff." Record at 45.

The Board's finding that the contract was within the scope of I.C. 22–3–2–14 is supported by the record.

Rayburn argues that the Board erred in its determination that Robert Johnson was an employee of Rayburn rather than an independent contractor. However, our review of the record again discloses evidence adequate to support the Board's finding.

■ The question whether an individual is an employee or an independent contractor for the purposes of the Workmen's Compensation Act is not governed by a hard and fast rule, but by the particular facts and circumstances of each case. *Allen v. Kraft Food Co.* (1948) 118 Ind.App. 467, 76 N.E.2d 845.

■ In this case, the Hearing Member cited three factors supporting his finding, subsequently adopted by the full Board, that Robert Johnson was an employee. "[P]laintiff's decedent was paid to do a job by the day, was provided with the tools and was clearly under the control of Rayburn whether or not Rayburn chose to exercise that control." Record at 15. The first two factors are undisputed and were properly considered by the Board in determining that Robert Johnson was an employee rather than an independent contractor. *See* 81 Am.Jur.2d *Workmen's Compensation* § 169 (1976). Rayburn correctly argues that the basic test for determining whether an individual is an employee or an independent contractor is whether the hiring individual has the power or right to direct and control the means, manner and method of performance. *See Meredith v. Northern Indiana Coop. Ass'n.* (1956) 126 Ind.App. 558, 132 N.E.2d 267. However, Rayburn then asserts that the Board erred because there was no evidence that he exercised control over Robert Johnson. Rayburn has misconstrued the test. The question is not whether he did in fact exercise control, but whether he had the right to exercise control. The evidence before the Board indicated that Rayburn supplied all of the equipment, determined where and when work would be done, and had the power to terminate the work relationship. It was reasonable to conclude that Rayburn had the right to control the manner in which Robert Johnson operated Rayburn's chainsaw or drove Rayburn's truck. The Board did not err in reaching the conclusion that Johnson was an employee.

Rayburn also argues that the Board erred in determining the amount of the

award. We agree, but not for the reasons proffered by Rayburn.

Indiana Code 22–3–3–17 (Burns Code Ed. Repl.1986) provides in pertinent part as follows:

"On and after July 1, 1976, when death results from an injury within five hundred [500] weeks, there shall be paid the total dependents of the deceased as determined by sections 18, 19 and 20 [22–3–3–18—22–3–3–20] of this chapter, weekly compensation amounting to sixty-six and two thirds per cent [66⅔%] of the deceased's average weekly wage, as defined by IC 22–3–3–22, until the compensation paid, when added to the compensation paid to the deceased employee, equals five hundred [500] weeks, and to partial dependents, as provided in sections 18 [22–3–3–18] and 20 [22–3–3–20] of this chapter."

The applicable provision of I.C. 22–3–3–22 (Burns Code Ed.Repl.1986) states:

"(a) ... In computing compensation for temporary total disability, temporary partial disability, and total permanent disability, with respect to injuries occurring on and after July 1, 1983, and before July 1, 1984, the average weekly wages are considered to be (1) not more than two hundred thirty-four dollars ($234) and (2) not less than seventy-five dollars ($75.00). However, the weekly compensation payable shall not exceed the average weekly wages of the employee at the time of the injury.

*       *       *       *       *       *

"(b) ... With respect to any injury occurring on and after July 1, 1983, and before July 1, 1984, the maximum compensation, exclusive of medical benefits, which may be paid for an injury under any provisions of this law or any combination of provisions may not exceed seventy-eight thousand dollars ($78,000) in any case."

While I.C. 22–3–3–22(a) refers to compensation for certain disabilities, the reference to the statute in I.C. 22–3–3–17 makes clear the legislative intent that the limits set forth in I.C. 22–3–3–22 apply to compensation for death as well as compensation for

disabilities. Robert Johnson was killed on February 6, 1984. Thus, his average weekly wage could not have been greater than $234 and the maximum compensation which could be paid his dependents was $78,000. Under I.C. 22–3–3–17, an average weekly wage of $234 would yield weekly compensation of $156. The Board's award of 500 weekly payments of $166 for a total compensation of $83,000 clearly exceeds these limits.

Upon review of the award, we can only conclude that the Board inadvertently used the wrong provision of I.C. 22–3–3–22 in its calculations. The award of $166 is 66⅔% of $249. The maximum average weekly wage permitted by I.C. 22–3–3–22 for an injury occurring between July 1, 1984, and July 1, 1985, is $249. The maximum total compensation allowed by the statute for an injury in the same period is $83,000. Robert Johnson's injury occurred on February 6, 1984, and the statutory limits which apply are $234 and $78,000. The award of the Board, therefore, was incorrect and must be modified to conform with these limits.

■ Rayburn argues that Robert Johnson's average weekly wages should have been found to be far less than $234 maximum of I.C. 22–3–3–22(a). We disagree. Indiana Code 22–3–6–1(d) (Burns Code Ed.Repl.1986) provides in pertinent part:

"(1) 'Average weekly wages' means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of injury, divided by fifty-two (52). But if the injured employee lost seven (7) or more calendar days during this period, although not in the same week, then the earnings for the remainder of the fifty-two (52) weeks shall be divided by the number of weeks and parts thereof remaining after the time lost has been deducted.

(2) Where the employment prior to the injury extended over a period of less than fifty-two (52) weeks, the method of

dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, if results just and fair to both parties will be obtained. Where by reason of the shortness of the time during which the employee has been in the employment of this employer or of the casual nature or terms of the employment it is impracticable to compute the average weekly wages, as defined in subdivision (10), regard shall be had to the average weekly amount which during the fifty-two (52) weeks previous to the injury was being earned by a person in the same grade employed at the same work by the same employer or, if there is no person so employed, by a person in the same grade employed in the same class of employment in the same district."

The record discloses that Johnson had been employed for eight months by Rayburn and that he was paid $60 per day. Johnson was frequently unable to work because of inclement weather. If the Board treated the days on which Johnson was unable to work as lost days under I.C. 22–3–6–1(d), it could have concluded that his average weekly wages were $300, well above the $234 maximum of I.C. 22–3–3–22. Thus, the Board did not abuse its discretion by finding Johnson's wages to be above the maximum.

■ Rayburn additionally argues that the $2,000 for burial expenses awarded by the Board pursuant to I.C. 22–3–3–21 should be included when computing the maximum compensation permitted by I.C. 22–3–3–22. Thus, under Rayburn's argument, the weekly payments could only total $76,000 rather than $78,000. Rayburn's argument presents a question of first impression. Despite the fact that the case law construing the statute provides little guidance, we think it clear that the burial expense under I.C. 22–3–3–21 does not constitute compensation for the purposes of I.C. 22–3–3–22. "The word 'compensation' has been defined as a *quid pro quo* for services rendered." *Kirby v. Indiana Employment Security Bd.* (1973) 3d Dist., 158 Ind.App. 643, 647, 304 N.E.2d 225, 227.

Workmen's compensation payments are tied to the value of the worker's services prior to his injury or death. *See* I.C. 22–3–6–1(d). These payments are, in effect, a *quid pro quo* for services which would have been rendered by the worker but for the injury or death. In contrast, the burial expenses provided for in I.C. 22–3–3–21 have no relation to the value of the services rendered by the deceased employee. They are an expense additional to the compensation owed. Our holding is buttressed by the rule of construction with regard to the provisions of the Workmen's Compensation Act.

> "It is the longstanding rule of this jurisdiction that terms contained in our Workmen's Compensation Act are to be liberally construed so as to effectuate the humane purposes of the Act; doubts in the application of terms are to be resolved in favor of the employee, for the passage of the Act was designed to shift the economic burden of a work-related injury from the injured employee to the industry and, ultimately, to the consuming public." *Talas v. Correct Piping Co., Inc.* (1982) Ind., 435 N.E.2d 22, 28.

■ Finally, Darlus Johnson argues that the Board erred by not imposing the penalty provisions of I.C. 22–3–4–13(e) (Burns Code Ed.Repl.1986), which provide as follows:

> "(e) In an action before the industrial board against an employer who at the time of the injury to or occupational disease of an employee had failed to comply with IC 22–3–5–1 or IC 22–3–7–34(a) or (b) [the statutes requiring employers to carry insurance]; the industrial board may award to the employee or the dependents of a deceased employee:
>
> (1) Compensation not to exceed double the compensation provided by this article;
>
> (2) Medical expenses; and
>
> (3) Reasonable attorney fees in addition to the compensation and medical expenses."

The language of the statute is clearly discretionary, and the discretion rests with the Board. In this case, there was ample

evidence from which the Board could have concluded that Rayburn's failure to procure insurance was the result of a genuine belief that Johnson was an independent contractor. It was within the discretion of the Board to determine that Rayburn's conduct did not warrant the imposition of the punitive provisions of I.C. 22–3–4–13(e).

The award is affirmed subject to modification in conformity with this opinion.

SHIELDS, P.J., and BUCHANAN, J., concur.