John RENO, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 52S00–8602–CR–140.

Supreme Court of Indiana.

Oct. 27, 1987.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant–Defendant John Reno was convicted of Burglary, a class B felony, and Battery, a class A misdemeanor, by a jury in the Miami Circuit Court. The Honorable T. Michael Smith sentenced Reno to thirteen (13) years to be served at the Department of Corrections. Reno appeals and raises the following issues:

1. error by the trial court in denying Reno's motion for a mistrial; and

2. insufficient evidence to sustain Reno's conviction for Burglary and Battery.

On April 24, 1984 at approximately 6:00 p.m., William Snow left his home at 476 Jackson Place in Peru, Indiana, to visit a friend while his wife was at work. He left a light on in the living room. When he returned at 9:00 p.m. that evening, the house was dark.

Upon entering, Snow found the light had been turned off. One of the window panes in his kitchen door had been removed. As Snow walked down a hallway, someone began beating him. Snow could not see his attacker.

Between 8:30 and 9:00 that evening a neighbor observed a man run from Snow's backyard, hit a clothesline, and fall.

Police found two bedrooms ransacked. They found a greasy cap and a flashlight, neither of which belonged to the Snows. A billfold containing five one hundred dollar bills was missing. A second billfold containing between fifty to one hundred dollars also was stolen. In addition, a blue bank and coins stored in a cedar box and mason jar were taken.

The Snows owned and rented the home adjacent to theirs at 470 Jackson Place. On April 24, 1984, the home was being rented to Dockie and Donna Gibson. At this time Polly Duke Bradley and her future husband John Reno, the Defendant, were staying with the Gibsons. Both Dockie and Reno were unemployed. Mrs. Snow had earlier informed Donna Gibson that Polly and John would have to leave. They left on April 26, 1984.

On April 24, 1984, Reno spent most of the day working on his motorcycle. Dockie Gibson testified that he went to bed between 7:30 and 8:00 that evening. He had gotten up to get a glass of water when he was interrupted by Reno, who ran in the back door. Reno pulled out money and stated words to the effect, "Look what I got." He told Gibson he had burglarized the Snow home.

Reno gave the Gibsons $182.00. On April 25, 1984, he and Polly Bradley purchased wedding rings for $262.00. They paid with three (3) one hundred dollar bills. Later that day a police detective came to the Gibson home. He made appointments for the Gibsons, Reno, and Bradley to come

to the police station. The detective observed an injury like a rope burn on Reno's neck.

The Sunday following the burglary William Snow confronted Reno and accused him of having burglarized his home. When Snow asked Reno how he got the ring-shaped injury on his neck, Reno stated he had run into the clothesline at 470 Jackson Place.

Approximately ten days after Reno and Bradley moved out of the Gibson home, Bradley told Mrs. Snow she could find a blue bank, a billfold and a mason jar in the closet in the upstairs bedroom at 470 Jackson Place. On May 8, 1984, Peru Detective Green found the bank and a pair of boots in a cubbyhole in the upstairs bedroom at that location. On April 30, 1984 an Information was filed against John Reno charging him with burglary and battery.

### I

Reno claims the trial court erred in overruling his motion for a mistrial during the testimony of defense witness Polly Reno. At the time of trial Polly Bradley was married to Reno. She essentially testified it was Dockie Ray Gibson, and not John Reno, who committed this crime. Her testimony directly refuted that of State's witnesses Dockie Ray and Donna Gibson.

■■■ On cross-examination the prosecutor began questioning Polly Reno about her present health and whether she was using any medication. The following occurred:

Q. Okay. Now going, let's start right now, are you feeling all right now?

A. Well I....

BY MR. SIMS: Judge, to which I am going to object, this was not gone into on direct examination, how she feels now has no relevance to any element of the offense.

BY THE COURT: He may wish to postpone cross examination at this time, I don't know.

Q. Are you on any medication Ma'am?

BY MR. SIMS: Judge, again, it is irrelevant to any issue and it is beyond the scope of direct examination.

BY MR. SIDERS: Your Honor, if this witness here is testifying in front of the jury I think they have a right to know as to whether or not she is on any medications, and I don't know what medications she is on or how they might affect her.

BY THE COURT: How is that relevant?

*BY MR. SIDERS: Well Judge, if we have someone here who is stoned out of her mind....*

BY MR. SIMS: Judge, I am going to object to this characterization and I move for a mistrial at this point. Mr. Siders is implying that the witness is sitting here stoned out of her mind, I think he has prejudiced this jury and at this point I move for a mistrial based on the characterization he.... (Emphasis Added)

Record at 469, L.15 to R. 470, L. 8.

A discussion with counsel followed wherein the trial court attempted to determine the purpose and relevance of the prosecutor's questions. The court then ruled it would permit the prosecutor to question Polly Reno about anything which might affect her present ability to testify. The defense renewed its objection as follows:

BY MR. SIMS: Let me just renew my objection and make a continuing objection to this line of questioning regarding medications unless there is some foundation laid that her ability to observe the kinds of things she has testified about is somehow impaired, or whatever medication she may have been taking affects her ability to remember those things.

BY MR. SIDERS: I am talking about now, I want to know about er (sic) ability to testify now.

BY MR. SIMS: All right, if there is no proof that any medication has any bearing on her ability to remember, I would ask that all of this testimony be stricken and the jury admonished not to regard it, and also I have not had a ruling on my Motion for Mistrial because of Mr. Siders'....

R. 471, LL. 15–18

The trial court denied the motion for mistrial. Further questioning by the prosecu-

tor apparently failed to establish Polly Reno's ability to testify was impaired by the use of drugs either on the night of the burglary or at the time of her testimony. The trial court then ordered the entire line of questions and answers struck from the record and the jury was admonished to disregard it. Determination whether to grant a mistrial is within the trial court's discretion and great deference on appeal is accorded the trial judge as he is in the best position to gauge surrounding circumstances of an event and its impact on the jury. *Hill v. State* (1986), Ind., 497 N.E.2d 1061, 1067; *Ramos v. State* (1982), Ind., 433 N.E.2d 757, 758. To succeed on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Hill, supra.* The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Id.* at 1065. The appellant has the burden to show no action other than a mistrial could have remedied the perilous situation into which he was placed. *Bedwell v. State* (1985), 481 N.E.2d 1090, 1093. It is proper for counsel to inquire as to the present condition of a witness relevant to that witness's ability to testify. These questions should not be accompanied by accusations or inferences of improper conduct. Here a rather simple matter became complicated by arguments and discussions of the lawyers. The trial court properly controlled the situation. The prosecutor was permitted to continue the questioning provided it was directed to anything which might affect Polly Reno's ability to testify. When it became clear the lengthy examination failed to show she was impaired by the use of drugs, the court stopped further examination on the subject, ordered it stricken from the record, and admonished the jury to disregard it. The trial court properly found irreversible prejudice did not result from this incident and thus did not abuse its discretion in denying Reno's motion for mistrial. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 294, *cert. denied* (1987), — U.S. —, 107 S.Ct. 910, 93 L.Ed.2d 860.

## II

■ Reno also contends the evidence presented at trial was insufficient to sustain his conviction. Where sufficiency of the evidence is challenged on appeal, this court does not reweigh evidence or judge the credibility of witnesses. Rather, we look to the evidence most favorable to the State, and all reasonable inferences therefrom. If a substantial body of evidence is found from which the trier of fact could infer guilt beyond a reasonable doubt, the verdict will not be disturbed. *Rogers v. State* (1986), Ind., 501 N.E.2d 433, 434. The facts as stated above clearly indicate that a jury could find Reno guilty beyond a reasonable doubt. Reno admitted he owned the greasy cap found in Snow's home. The flashlight belonged to Gibson. On the night of the burglary, Reno was seen with an injury resembling a rope burn on his neck. A witness saw a man running from the burglarized home hit a clothesline, causing him to fall. The day after the incident, Reno, who was unemployed, purchased wedding rings and paid with three (3) one hundred dollar bills. Five one hundred dollar bills were stolen from Snow's residence. On May 8, 1984, on a tip from Polly Bradley, an investigator retrieved the blue bank and a pair of Reno's boots from a cubbyhole in Gibson's home. Finally, Reno admitted having committed the crime to State's witnesses. Even though this last factor was disputed at trial, the evidence provided the jury with a substantial factual basis by which to convict Reno.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.