Charles **FORD**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 45S00–8605–CR–410.

Supreme Court of Indiana.

Feb. 8, 1988.

Ellen S. Podgor, Pauper Appellate Counsel, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant for the crime of Murder in the Perpetration of a Robbery. Appellant was sentenced to a term of sixty (60) years.

The facts are: Late on the evening of February 21, 1985, Robert Holder, Pedro Rodriguez, James Sollors and Barbara Miller, the bartender, watched an Indiana University basketball game on television in the Beach Cafe. Sometime before the game was over, the cafe was closed and the door locked. Between 12:30 and 12:45 a.m., the men decided to leave, and Barbara Miller accompanied them to the door to unlock it for them. As soon as she unlocked the door, a man entered with a sawed-off shotgun followed by four other men, one of whom was armed with a handgun.

Holder surrendered $120 to the man carrying the handgun. He was then ordered to lie on the floor, as were the others. Rodriguez testified he felt someone remove his wallet which contained his identification and credit cards. Sollors surrendered his wallet containing $34, identification and credit cards. Moments later they heard a shot. After the robbers had left, the robbery victims found Miller's body behind the bar. Autopsy evidence and police expert evidence disclosed that she had

been fatally wounded by a .25 caliber pistol bullet.

Joseph Hayduk, co-owner of the Beach Cafe, testified that when he arrived at the restaurant after the crime he found that fifty one dollar bills were missing. Evidence established that these bills had serial numbers 800 through 850. On February 24, 1985, Margarita Spearman, a cashier at the Hill Shell Station in Gary, received two one dollar bills in payment for gasoline. She noticed that the serial numbers matched the ones she had seen on a flier listing the numbers of bills taken at the Beach Cafe hold up.

She and Jim Joy, who was working with her at the time, recorded the license number of the automobile and described it as being a black Monte Carlo. As a result, Craig Thomas was arrested on February 24. This in turn led to the arrest of appellant later that day.

At the time appellant was arrested, dollar bills were taken from him which were identified as bills taken in the robbery. Following his arrest, appellant gave a statement to the police identifying the robbers as Craig Thomas, the owner of the black Monte Carlo, Henry Keys, Patrick Vernado, Mike Ford, and appellant. He described how they had planned the robbery of the Beach Cafe. He told how they took the men's wallets and also said that Mike Ford and Craig Thomas took "the woman" (meaning the victim in this case) inside. Shortly thereafter they heard Craig say "I got the money, I got the money", then they heard a shot and they all left. Appellant claimed that Vernado shot the victim, but he did not see him do it. He further stated that the weapon used in the shooting was a .25 caliber automatic pistol.

Appellant claims the verdict of the jury is not sustained by sufficient evidence. He bases this claim on the fact that none of the victims to the crime could positively identify appellant as one of the robbers. He further claims that in his statement he denied involvement in the murder even though he admitted helping plan and participate in the robbery. He argues that he was not aware of the shooting until after it had occurred.

■ Appellant ignores the fact that there was ample evidence submitted to the jury to demonstrate that he knowingly participated in the planning of the robbery and in the robbery itself. There was, therefore, ample evidence before the jury that he was knowingly participating in a robbery at the time the victim was killed. No specific intent to kill is necessary for a felony murder conviction. *Simpson v. State* (1978), 269 Ind. 495, 381 N.E.2d 1229. There is ample evidence in this record to support the jury's verdict of guilty of felony murder.

■ Appellant claims the trial court erred when it admitted a .25 caliber bullet into evidence absent a showing of a chain of custody. The physician who performed the autopsy on the victim testified that he removed a bullet from her body and gave it to one of his assistants. Charlene Bulot testified she received the bullet from the doctor and sealed it in an envelope with the number A–105–85. The correct autopsy number was A–106–85. However, Bulot explained the difference in the numbers, in that when she came to work that morning an assistant erroneously gave her the number of an autopsy that had been performed the night before as the number of the autopsy to be performed that day.

She testified that she placed the erroneous number on the envelope. However, she positively identified the envelope and the bullet it contained as the bullet she had sealed in that envelope when she received it from Dr. Kim during the autopsy. The confusion as to the numbering of the bullet was fully presented to the jury for their evaluation. Bulot's testimony gave them ample evidence upon which to find that the bullet was in fact the one taken from the victim.

■ Appellant claims the court erred in admitting State's Exhibit No. 15 which is a photograph of the scene of the crime. Appellant claims the photograph should not have been admitted because the identifying police officer could not identify some of the

small objects depicted. However, he did testify that the photograph accurately depicted the inside of the cafe shortly after the crime had been committed. The officer's identification of the photograph was sufficient. It was admissible into evidence to aid the jury in its orientation of the circumstances surrounding the crime. *See Schoffstall v. State* (1986), Ind.App., 488 N.E.2d 349.

■ Appellant also claims the trial court erred in admitting a wallet identified by Sollors as the wallet taken from him during the robbery. Again, appellant claims there was not a sufficient chain of custody. Here the chain of custody is relatively insignificant in that Sollors identified the wallet as his own. There was no issue as to any possible tampering with the wallet. Non-fungible items do not require a high degree of scrutiny. *Davis v. State* (1985), Ind., 472 N.E.2d 922. We see no error in the admission of the wallet.

■ Appellant claims the trial court erred in allowing the dollar bills into evidence, again claiming an insufficient chain of custody. However, the dollar bills were identified by serial number. Here again we do not have the problem of fungible goods which are tampered with or commingled. The dollar bills were positively identified; therefore, the chain of custody is of little moment. *Id.*

Appellant also claims there is no showing that he was properly arrested at the time the dollar bills were taken from him. However, there was nothing in this record to indicate any challenge to the arrest nor does appellant, in his brief, cite us to any such contention other than his bare assertion of such. There is nothing presented here for us to pass upon the question of the legality of his arrest.

■ Appellant claims the trial court erred in allowing the testimony of Officer Thomas Sak. At the commencement of trial, there had been a separation of witnesses; Officer Sak, however, remained in the courtroom throughout the testimony of other witnesses, then was called to testify. Upon the separation of witnesses, it is cus-

tomary for each party to retain one of their witnesses in the courtroom to aid in the conduct of the case. When appellant objected to Officer Sak testifying, the prosecutor pointed out that Officer Sak had obviously remained in the courtroom.

It was well-known to appellant that Sak was the police officer that had taken his statement following his arrest. Therefore neither his remaining in the room nor the fact that he would ultimately testify could possibly have been a surprise or unknown to appellant. The trial court did not abuse its discretion in permitting Sak to testify even though he had remained in the courtroom following the separation of witnesses. .

■ Appellant claims the trial court erred in admitting his statement into evidence. He claims that he was only eighteen years old, was illiterate, and was intimidated by the police officers into making his statement. The testimony of the police officers was that he was fully advised of his rights and freely talked about his participation in the crime. Thus there was a conflict in the evidence which the trial court was required to weigh to determine whether or not the statement should be presented to the jury. We will not substitute our judgment for the trial court's judgment in the weighing of such facts. *Coleman v. State* (1986), Ind., 490 N.E.2d 711. We see no error in the admission of appellant's statement.

■ Appellant claims the trial court erred in admitting the opinion of Officer Gauthier due to lack of adequate foundation for an expert opinion. Officer Gauthier testified that he was trained as an expert on firearms and ballistics and had previously testified as an expert fifty-two times. Appellant places great weight on the fact that when Officer Gauthier testified concerning the lands and grooves on the bullet, he also stated that the same type of land and groove pattern would be found on bullets other than .25 caliber. Appellant thus reasons that it was error to allow Gauthier to testify that the bullet was in fact a .25 caliber bullet. In view of the expertise possessed by Officer Gauthier, as presented to the jury, it was for them

to determine whether or not he demonstrated the expertise to advise them that the bullet in fact was a .25 caliber bullet. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, *cert. denied* (1985), 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. There was no error in the admission of the testimony of Officer Gauthier.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.