540 N.E.2d 585 (1989)
Tony GREGORY, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 33S00-8701-CR-00097.
Supreme Court of Indiana.
June 29, 1989.
*587 Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.
Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.
PIVARNIK, Justice.
Defendant-Appellant Tony Gregory was convicted after a jury trial of Murder. In sentencing Gregory, the court found the aggravating and mitigating circumstances offset one another and imposed a forty (40) year sentence. Gregory now directly appeals his case to this Court and raises the following issues:
1. whether the trial court abused its discretion by refusing to collectively and individually voir dire the jury after allegations certain jury members had violated the court's admonitions;
2. whether the court erred by admitting evidence of Gregory's subsequent escape from prison;
3. error in admitting Gregory's confession;
4. whether the verdict was contrary to law for failure to establish guilt beyond a reasonable doubt;
5. error in not permitting individual or small group voir dire;
6. error in permitting a police officer witness to sit at counsel table;
7. whether certain exhibits were erroneously admitted into evidence; and
8. error in permitting an officer to testify regarding statements Gregory made to his father.
The facts most favorable to the verdict show that on October 15, 1985, at approximately 2:18 a.m., an Indianapolis operator received a call from a woman asking for help. While the operator attempted to contact police, she heard the woman pleading with someone not to hurt her. The operator believed the woman called the person "Tony" or "Eddie." The operator then heard a loud thud and a sound as though someone had the wind knocked out of him. Just then she reached the sheriff's dispatcher. The dispatcher asked the woman for her address, and she responded "418 S. 26th Street." She also said "please hurry because he has stabbed me." The phone then went dead.
Unfortunately, the address the woman gave was incorrect, and some minutes were lost until the correct address was located. When Officers Riggs and Armstrong approached the house, they saw the storm door was closed but the inside front door was open. The men knocked on the door and announced themselves, but no one responded. *588 After entering the house, Armstrong noticed a closed bedroom door near where he was standing, and a butter knife protruding from the door jamb. Armstrong knocked on the door and again announced himself and Riggs. A male voice answered something to the effect that "everything is okay, it's just a family disturbance." After saying they would leave when they knew everything was fine, or else they would have to kick the door in, they heard, "if you kick in the door, you'll hear from my lawyers."
During this conversation, Riggs realized he could open the door with a bobby pin found in a nearby bathroom. He did so, and upon entering the room, the officers found Gregory sitting on the floor, cradling his nearly nude mother in his arms. The officers assumed she was dead because she was a dark blue color. The room was in disarray, and there was blood on the floor, walls, and bed sheets.
When the officers ordered him to let go of his mother, Gregory grabbed her by the throat and shook her, telling her to tell them everything was alright. When Armstrong tried to grab Gregory, he jumped up and tried to get to the door. The officers subdued and handcuffed him. As they were leading Gregory out of the house, he looked over his shoulder and stated, "I did it for you, Linda." Linda was Gregory's girlfriend.
The officers placed Gregory in a police car and locked the door. They went back to the house to check on Gregory's mother, Nova Gregory. She had a gaping four to five inch wound in her back, near her left kidney. Medics were never able to revive her.
While the officers were inside, Gregory managed to get his hands, still in cuffs, in front of him. He then began kicking, screaming, and beating his head against a window. Eventually, Gregory broke the glass in the left rear window with his head, and somehow managed to hurl himself through the window. He fell on the pavement next to the police car, screaming. The officers cuffed Gregory's legs and locked him in the car. He was taken to the hospital and treated for injuries.
Once in the hospital Gregory again became violent and was strapped to a bed. He yelled and screamed things which at times made no sense and at other times did. Several times he asked about his mother and his girlfriend, Linda. He stated once he had not meant to hurt anyone.
Dr. Doyle treated Tony Gregory; he noticed Gregory smelled of alcohol and had multiple lacerations to his face, scalp, elbows, and right hip. He had swelling and bruising around his eyes, and a large bruise on his upper chest. Dr. Doyle injected xylocaine, a local anesthetic, into the lacerations. X-rays showed Gregory had a broken nose. Also, blood tests revealed he had a blood alcohol content of .147 at 4:30 a.m. A drug screen revealed the presence of phenobarbital, a barbiturate, in Gregory's blood. The test did not detect the amount of drug, only its presence.
At approximately 6:40 a.m. the officers took Gregory to the New Castle Police Department. Officer Stevens gave him his Miranda warnings and Gregory signed a waiver form. Officers described him as alert and cooperative. Stevens questioned Gregory for about an hour before he gave his taped statement. Gregory told Stevens he had two beers earlier that night and had not taken any drugs except what was given him at the hospital.
At trial, Dr. Jeri Horn, a psychologist appointed by the court, testified regarding her evaluation of Gregory's competency to stand trial and whether he was legally insane at the time he killed his mother. She found him competent and not insane, although she did feel he was mentally ill. She diagnosed him as having undersocialized aggressive conduct disorder, or antisocial personality disorder. Dr. Larry Davis, a psychiatrist, also examined Gregory. He testified he was competent to stand trial, but found him to be suffering from the mental disease or defect of depression or dysthymic disorder on October 15, 1985. This was compounded by his use of alcohol and phenobarbital on the night in question. *589 However, he did not find Gregory to be insane at that time.

I
Gregory claims the trial court erred in refusing to collectively and individually voir dire the jury after learning certain jury members had spoken to each other about him during the trial. Prior to each recess, the trial judge admonished jury members not to discuss the case with anyone until they heard all the evidence, and then only with other jury members. During trial, defense counsel moved for a mistrial and requested a hearing. At the hearing Carol Rigney, a spectator, testified out of the jury's presence that she overheard two jurors talking about how bad Gregory looked. One woman said she could not look at him because she thought she would faint and cause a mistrial. She said she had to keep reminding herself he was nineteen and not sixteen years old. Rigney left after hearing this conversation. Still later during trial, defense counsel learned that over a weekend recess, a juror stated at a baseball game that she was a juror on a case in which the boy killed his mother.
The trial court denied defense counsel's motion for mistrial with regard to Carol Rigney's testimony. Counsel then requested the court to interrogate the jurors collectively. The court denied the request and stated the violations were strictly technical because they did not involve issues of guilt or innocence. Counsel then motioned to have the jury sequestered; this was also denied. After learning of the conversation at the baseball game, counsel requested a collective polling of the jury to determine whether they had been exposed prejudicially to anything which would have caused them to decide the case prematurely. The court conducted limited, general, and collective questioning. The court found no reason to sequester the jury. Gregory claims the judge abused his discretion in denying these motions and requests, and he was therefore denied a fair trial.
A trial court has discretion in determining whether to grant a mistrial, and this decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. Reno v. State (1987), Ind., 514 N.E.2d 614, 617. To succeed on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Id., citing Hill v. State (1986), Ind., 497 N.E.2d 1061, 1067. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. The appellant carries the burden to show no action other than a mistrial could have remedied the perilous situation into which he was placed. Reno, 514 N.E.2d at 617, citing Bedwell v. State (1985), 481 N.E.2d 1090, 1093.
Gregory argues the trial court should have followed the procedures erected by this Court in Lindsey v. State (1973), 260 Ind. 351, 295 N.E.2d 819. Lindsey was charged with burglary. During the trial, a local newspaper published articles which stated the victim was raped during the burglary. It also stated Lindsey had been involved in a similar situation where the victim was raped on a previous occasion. There was lengthy discussion about the facts of Lindsey's present trial and past encounters with the law that were not factually accurate. The standard set by Lindsey was that in such a situation the trial court should immediately investigate by examining the jury individually, if necessary, and collectively, to determine whether any of the jurors had seen or heard of the publicity and, further, whether any of them had been influenced by it. This Court stated in Lindsey: "A denial of a motion to interrogate the jury will be reversible error only if ... there has been substantial peril." Id. at 359, 295 N.E.2d at 824. The Court further stated clearly the trial court is required to interrogate the jury only "[i]f the risk of prejudice appears substantial, as opposed to imaginary or remote only... ." Id. at 358, 295 N.E.2d at 824. In Gee v. State *590 (1979), 271 Ind. 28, 41, 389 N.E.2d 303, 312, a juror made a telephone call during lunch recess and was heard to say he was a juror on Gee's case and he knew Gee was a liar. The court conducted a hearing on Gee's motion for mistrial, questioned the juror, and the juror stated he had made reference to the fact he was a juror on a case, not naming defendant Gee, but did not state he thought Gee was a liar. The trial judge was satisfied the juror understood his duties as a juror and refused to grant a mistrial. The court's action was found to be satisfactory because it was clear the violation did not involve extraneous influences such as threats or newspaper accounts. Id. at 42-43, 389 N.E.2d at 313.
The trial court in the instant case noted that the remarks of the jurors went only to Gregory's appearance and not an appraisal of the evidence or an indication of conclusions as to his guilt or innocence. He considered the violation a mere technical one of the admonitions he had given the jury and did not find it to constitute a comment on the evidence nor an indication of the jurors having formed an opinion on Gregory's guilt or innocence. He felt there was no need to interrogate the jury pursuant to the Lindsey procedure or to take other curative action. We fail to see Gregory has shown substantial evidence of prejudice by the court's refusal to interrogate the jury. The court held a hearing and determined it was not necessary. In view of the facts here, no reversible error is demonstrated. Matthews v. State (1985), Ind., 476 N.E.2d 847, 852; Gee, supra; Bruce v. State (1978), 268 Ind. 180, 218, 375 N.E.2d 1042, 1067, cert. denied (1978), 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662; Lindsey, supra.
Prior to resuming trial after the weekend recess, Gregory's counsel again moved for a mistrial based on information given to counsel by one Howard McDonald. McDonald called Gregory's counsel and stated juror Reed had commented to some people that she was on a jury in a case in which a boy had killed his mother. Gregory concedes this consisted of hearsay, and probably did not amount to what would require a mistrial, but requested the court to question the jurors as to whether they could still listen to the evidence with open minds. The trial court questioned the jurors collectively about any publicity they might have heard over the weekend or whether anything had happened that might have affected the jurors' ability to adhere to the court's admonitions. Each juror stated he did not believe he had been adversely affected by anything he heard over the weekend. Gregory complains the trial court should have followed the procedures utilized in Lindsey, supra, apparently assigning error in the fact the trial court did not individually examine each juror. We see no merit to a claim of error here. The statement attributed to the juror falls short of proof required to establish misconduct on the juror's part. The alleged comment was merely descriptive of the broad nature of the case. Gregory claimed insanity as a defense and admitted he killed his mother. No prejudice is shown and we find no abuse of discretion by the trial court meriting reversal. Currin v. State (1986), Ind., 497 N.E.2d 1045, 1046-47; Driver v. State (1984), Ind., 467 N.E.2d 1186, 1188. Gregory's claim that the trial court should have sequestered the jury particularly at the time of the first violation here fails to have merit for the reasons we have already expressed. Sequestration of a jury is mandatory only in a capital case. Karlos v. State (1985), Ind., 476 N.E.2d 819, 823. The complaints of juror misconduct here do not indicate any involvement of the jurors receiving extraneous information. Sequestration of the jury would not cure the problem of the jurors discussing the case among themselves and therefore was not an answer to the alleged problems. The trial court did not abuse its discretion in denying Gregory's sequestration motion.

II
While awaiting trial on this charge, Gregory escaped from the Henry County Jail. This occurred about six months after he killed his mother. Gregory filed a motion in limine concerning evidence of this escape and said motion was granted. Several *591 witnesses had testified that Gregory exhibited aggressive or violent behavior only when he was under the influence of alcohol or other drugs. The prosecutor interrogated Gregory about this pattern of behavior and Gregory agreed he could not remember a time when he was violent or aggressive when he was sober. The State then asked the restriction of the in limine order be removed, claiming evidence of Gregory's jail escape was relevant on the issue of his sanity and to rebut the evidence that Gregory acted violently only when intoxicated. At a hearing on the issue, the State offered to prove that early on the morning of April 28, 1986, Gregory threatened a female dispatcher with two self-made knives and thereby escaped from the Henry County Jail. The State argued this evidence was relevant not only on the issue of Gregory's sanity but on consciousness of guilt and intent, in rebuttal of the evidence that Gregory was violent only when intoxicated. Gregory claimed that he had been drinking and ingesting drugs on the day he killed his mother, and further claimed he was insane at the time of the commission. The trial court agreed with the State's position and permitted the prosecution, over defense's objection, to question Gregory about the jail escape and also permitted the State to present the guard at the prison to testify in rebuttal concerning Gregory's actions with the knives. Gregory claims the trial court erred in permitting evidence of his jail escape six months after the offense, claiming it is irrelevant, both on the insanity issue and the intent issue.
The evidence which may be admitted when an insanity defense is interposed is not limited only to past conduct, behavior, or events. "Once a defendant offers an insanity plea, all relative evidence is deemed admissible. Even evidence which is otherwise incompetent or immaterial may be admitted to show the mental state of the defendant." Wood v. State (1987), Ind., 512 N.E.2d 1094, 1098. In Eubank v. State (1983), Ind., 456 N.E.2d 1012, the defendant was being tried for escape, two counts of kidnapping, armed robbery, and theft. He interposed a defense of insanity. The State was permitted to call a deputy sheriff who testified to an escape by the defendant that occurred a little more than a year after the charge for which he was being tried. Eubank claimed the evidence was highly prejudicial as it was not relevant to his insanity at the time of the commission of the crimes for which he was then being tried. This Court stated: "The challenged evidence disclosed conduct almost identical to that for which he claimed no responsibility by reason of diminished mental capacity, and although it occurred approximately one year subsequent to the offense charged, it was relevant, as it evidenced a conscious and intelligent choice and determination to escape." Id. at 1016. Although the instant case does not indicate identical conduct of Gregory in the subsequent escape, it does demonstrate his use of knives in a calculated manner to effect his escape and demonstrated his mental state to form an intent to carry out the plan. This was probative as to his insanity plea, his claims that he was under the influence of alcohol and another drug, and that he becomes violent only when he has been drinking or ingesting drugs. Evidence of conduct subsequent to the charged offense has been held relevant to the insanity issue in Lock v. State (1980), 273 Ind. 315, 322, 403 N.E.2d 1360, 1366, where the court permitted evidence of a pro se motion for change of venue; Brown v. State (1987), Ind., 512 N.E.2d 173, 175, where the court admitted into evidence a property settlement agreement signed by the defendant after the crime was committed and while the defendant was in jail; and more recently in Miller v. State (1988), Ind., 518 N.E.2d 794, 796, where the court allowed into evidence the transcript of a hearing before the Department of Labor for benefits claimed by the defendant, which was held after the charged crime and showed defendant's ability to function.
In the instant case, the evidence showed Gregory killed his mother by stabbing her with a knife. His mental state and intent were relevant issues at trial. Flight or escape from custody may be admissible and relevant as circumstantial evidence of consciousness *592 of guilt. Porter v. State (1979), 271 Ind. 180, 194, 391 N.E.2d 801, 812. The remoteness in time and the difference in factual circumstances of other acts of defendant go to the weight of the evidence, not its admissibility. Miller, supra. For all these reasons we find no error on this issue.

III
The next issue Gregory raises is trial court error in denying his motion to suppress his taped confession. He asserts his statement was made while he was intoxicated, and, therefore, he did not make a knowing, voluntary, and intelligent waiver of his rights.
Gregory was discharged from the hospital at approximately 6:35 a.m. At 4:30 a.m. a blood sample was drawn and revealed a blood alcohol content of .147. A drug screen was conducted, the results of which were not known for one week, but did show the presence of phenobarbital, a depressant, in Gregory's system. The screen did not register the amount of drug in his system. He had also been injected with xylocaine, a local anesthetic.
Officer Stevens began questioning Gregory at 6:40 a.m. and spoke with him for about an hour before recording Gregory's statement. Stevens testified at trial he read Gregory his Miranda rights, and Gregory stated he understood them. His speech was not slurred and Stevens did not detect the odor of alcohol on him. Gregory told Stevens he had only two beers prior to the incident and that he had taken no drugs. Stevens stated no one told him Gregory had a .147 blood alcohol content and that he had earlier smelled of alcohol.
When Stevens began taping the statement, Gregory admitted he did not fully know his rights. Stevens again explained his rights and was satisfied Gregory understood them. Gregory then admitted he killed his mother.
Gregory now states he was in pain during the interrogation, and he was most concerned with his mother's condition. He asserts Stevens promised him he could see his mother after he gave a statement, knowing his mother was already dead. Gregory states his eyes were so swollen he couldn't read the waiver form and that he was so nervous and afraid he basically agreed with whatever the officers told him.
The State has the burden to prove beyond a reasonable doubt the confession was voluntarily given. Jordan v. State (1987), Ind., 510 N.E.2d 655, 657. A signed waiver is not conclusive of a knowing and voluntary waiver. Dickerson v. State (1972), 257 Ind. 562, 570, 276 N.E.2d 845, 849. In determining whether a statement is voluntarily given, we consider all the surrounding circumstances in order to determine whether there was any inducement in the form of violence, threats, promises, or improper influence. Grey v. State (1980), 273 Ind. 439, 444, 404 N.E.2d 1348, 1351. We use the same test to determine whether Miranda rights were voluntarily waived. Id. When a defendant claims he was under the influence of drugs at the time he made a statement, the degree of his mental impairment is of critical importance. Whitehead v. State (1987), 511 N.E.2d 284, 293, cert. denied (1988), ___ U.S. ___, 108 S.Ct. 761, 98 L.Ed.2d 773. Also, where the evidence conflicts, on appeal we consider only that evidence which tends to support the trial court's ruling. If the trial court's ruling is supported by substantial evidence of probative value, we will not disturb it. Id. This court has stated that it is only when an accused is so intoxicated that he is unconscious as to what he is saying that his confession will be inadmissible. Intoxication of a lesser degree goes only to the weight to be given the statement and not to its admissibility. Williams v. State (1986), Ind., 489 N.E.2d 53, 56, citing Bean v. State (1978), 267 Ind. 528, 532, 371 N.E.2d 713, 715.
The evidence presented in this case is conflicting, and therefore we look to the evidence favorable to the court's determination. The State presented evidence not only of a signed waiver, but that Gregory spoke clearly when giving his statement, he eventually said he understood his rights, and recounted in some detail the events of *593 the preceding hours. He made no effort to stop the questioning. From this we determine there was substantial evidence of probative value to support the court's decision to admit the confession.

IV
We next address the issue of whether there was sufficient evidence to sustain Gregory's murder conviction. When the sufficiency of the evidence is challenged on appeal, this court may not reweigh evidence or judge the credibility of witnesses. We look only to that evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom; if there is substantial evidence of probative value to support the verdict, it will not be disturbed. Alfaro v. State (1985), Ind., 478 N.E.2d 670, 672.

(A)
Gregory argues that because the evidence establishes his guilt on the lesser included offense of voluntary manslaughter, we should direct acquittal on the murder conviction and enter judgment on voluntary manslaughter and remand the case for resentencing on the Class B felony.
When the police questioned Gregory, he stated he and his mother began to argue about their respective romantic relationships, something they commonly did when angry with each other. He stated the argument escalated into a physical fight, and maintains he never intended to kill his mother.
As we stated in Love v. State (1977), 267 Ind. 302, [305] 369 N.E.2d 1073, 1075: "[A]ll that is required to reduce a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, to exclude malice, and to render the defendant incapable of cool reflection." Hardin v. State (1980), 273 Ind. 459, 404 N.E.2d 1354.
Hedrick v. State (1982), Ind., 430 N.E.2d 1150, 1157. When a defendant introduces the element of sudden heat into a case, the State must negate the presence of sudden heat beyond a reasonable doubt. It may meet this burden by rebutting the defendant's evidence or affirmatively showing in its case-in-chief that the defendant was not acting in sudden heat when the killing occurred. Ronk v. State (1984), Ind., 470 N.E.2d 1337, 1339, citing Palmer v. State (1981), Ind., 425 N.E.2d 640, 644-45. Also, whether a defendant acted in sudden heat is a question which the jury resolves. Ronk, 470 N.E.2d at 1339, citing Estes v. State (1983), Ind., 451 N.E.2d 313, 314. Mere words are not sufficient provocation to precipitate sudden heat. Sears v. State (1986), Ind., 494 N.E.2d 1286, 1287. The only evidence of sudden heat presented at trial came from Gregory. The State presented evidence that three weeks prior to her death, Tony and his mother fought and he threatened to kill her. He sharpened his knife earlier in the evening. Nova Gregory locked her bedroom door because she feared her son, and Tony entered her room with an unsheathed hunting knife. He entered by obtaining a ladder from the garage and climbing through a window. There was evidence he attempted to stab her several times as the sheets and mattress were cut. The mattress had been turned over and the sheets replaced before the police arrived. There was adequate evidence from which the jury could determine Gregory intentionally killed his mother and was not acting in sudden heat.

(B)
Gregory next argues the evidence was insufficient to prove he knowingly killed his mother because his level of intoxication was such that it rendered him incapable of forming the requisite intent.
A defendant in Indiana can offer a defense of voluntary intoxication to any crime. The potential of this defense should not be confused with the reality of the situation. It is difficult to envision a finding of not guilty by reason of intoxication when the acts committed require a significant degree of physical or *594 intellectual skills. As a general proposition, a defendant should not be relieved of responsibility when he was able to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill.
Terry v. State (1984), Ind., 465 N.E.2d 1085, 1088. As previously noted, on the night of the killing Gregory ingested an unknown amount of phenobarbital and also drank beer. His blood alcohol level was .147, well over the legal limit for intoxication for drivers. As Gregory points out, the evidence is uncertain as to what level of intoxication he reached at the point he killed his mother. However, what is not uncertain is that Tony Gregory got a ladder from the garage of his home, put the ladder up to the window of his mother's bedroom, unlatched the window, and climbed in. He carried with him an unsheathed hunting knife. At some point he and his mother struggled, and he was able to cut a four inch gash in her lower left back. The wound was so severe that within a short period of time she lost a great deal of blood and was all but dead by the time police arrived. Under the Terry standard recited above, these actions required a sufficient amount of physical dexterity and mental calculation to render him responsible for his actions. We find the evidence sufficient.

(C)
Gregory also argues that because he suffered from mental illness at the time this offense occurred, he should have been found guilty but mentally ill, rather than guilty, of murder.
Both experts who testified at trial stated they believed Gregory to be suffering from mental illness at the time he killed his mother. Gregory's behavior in the squad car and at the hospital certainly was abnormal. However, there was also evidence which indicated Gregory knew what he was doing; he responded to police when they first arrived, and when later questioned, answered clearly and logically. Also, when he first encountered the police, Gregory attempted to flee. The jury heard evidence of Gregory's escape from jail, which they may have interpreted to be his consciousness of guilt.
In Taylor v. State (1982), Ind., 440 N.E.2d 1109, 1110, we stated, in dealing with the same issue, that the jury is entitled to consider both lay and expert testimony in assessing the defendant's mental capacity at the time the crime occurred. When faced with conflicting evidence, the jury is free to accept lay testimony and reject the conclusions of experts. Inasmuch as there is evidence to support the jury's factual determination, its conclusion must be sustained. Id.
The evidence in this case was conflicting. In accordance with the above standard, however, we find there was sufficient evidence to support the jury's determination, and therefore we sustain its conclusion.

V
The next error Gregory raises is the trial court's denial of his motion for individual sequestered voir dire of prospective jurors.
Gregory correctly points out the standard for determining whether jurors should be individually examined separate from the panel at large, or in groups of no more than three. In Hadley v. State (1986), Ind., 496 N.E.2d 67, 72, we stated that the trial court has broad discretionary power in regulating the form and substance of voir dire examination. Individualized voir dire of prospective jurors may be required where circumstances are highly unusual or potentially damaging to the defendant. However, the defendant has no absolute right to have each juror separately sequestered and questioned outside the presence of other jurors. Additionally, as the State notes, we will not review a trial court's determination absent a clear showing of abuse of discretion. The defendant must show he was prejudiced by the decision. Smith v. State (1984), Ind., 465 N.E.2d 1105, 1115.
Gregory claims the court abused its discretion in denying the motion largely because of the sensitive factual nature of the case. While the circumstances of this *595 case might be considered upsetting to rational sensibilities, it does not substantially differ from other criminal cases tried in large number by courts. No evidence is presented from which we can say he was prejudiced. In Indiana, the normal course is to conduct group voir dire, and we see no reason to deviate from that practice here.

VI
The trial court granted a separation of witnesses in this cause. Gregory does not contend the trial court erred in granting a separation of witnesses and then permitting the prosecution to retain a police officer at counsel table to assist the prosecutor. Instead, Gregory contends the trial court erred in not granting his motion to require the State's police officer to testify first.
It is well settled that the matter of separating witnesses is left to the discretion of the trial court and, further, it is the accepted procedure to permit each party to have one person to aid counsel at trial even if that person is later to testify. Ford v. State (1988), Ind., 518 N.E.2d 1082, 1085; Budd v. State (1986), Ind., 499 N.E.2d 1116, 1119; Wisehart v. State (1985), Ind., 484 N.E.2d 949, 956, cert. denied (1986), 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556. This is so even if the police officer witness who is retained at counsel table is an eyewitness to the events of the crime. Abercrombie v. State (1985), Ind., 478 N.E.2d 1236, 1239. It is not required that that officer testify first. Rutledge v. State (1983), Ind. App., 452 N.E.2d 1039, 1042-43.
In the instant case, Gregory does not claim that any discrepancy occurred in the testimony of the retained officer which prejudiced him. He has not even identified the officer who remained in the courtroom, what his testimony was, and how he was prejudiced by the order of the evidence.
That the retained witness testifies after other witnesses have testified is not an abuse of discretion in the trial court's separation order. Ford, supra; Wisehart, supra; Abercrombie, supra; Rutledge, supra. The trial court did not abuse its discretion in denying Gregory's motion.

VII
Gregory claims the trial court erred in admitting photographs designated State's Exhibits 7A-7G, photographs of the victim, and 8A-8I into evidence, claiming these exhibits were irrelevant. All of the photographs were sponsored by Sergeant Cashdollar, who took the photographs. 7A-7G were taken of the victim at the autopsy and depicted the various injuries that appeared on her body. Sergeant Cashdollar testified they thoroughly and accurately depicted the victim as she appeared at the time he took the photographs. Gregory's objection at trial differed from the one he makes here on appeal. At trial he claimed the photographs were not yet relevant since the pathologist had not testified and the photographs should not have been admitted and passed to the jury at that time. His objection was directed only to the timing of passing the exhibits to the jury. He indicated he would concede their admissibility once the pathologist testified. On appeal, however, Gregory argues Exhibits 7A-7G were only marginally relevant, were cumulative of other evidence and were prejudicial. Since Gregory raises a different ground for objection on appeal than the one he raised at trial, the issue is waived. Johnson v. State (1985), Ind., 472 N.E.2d 892, 909-10. However, even if Gregory had not waived the issue, his argument on appeal must fail.
The cause of death was established through the testimony of Dr. Pless. Sergeant Cashdollar observed the wounds and injuries on the body and was permitted to describe them to the jury. Looking at the exhibits as Cashdollar described them would aid the jury in understanding and orienting the evidence. Christopher v. State (1987), Ind., 511 N.E.2d 1019, 1022; Montano v. State (1984), Ind., 468 N.E.2d 1042, 1047. Cashdollar testified the photographs were true and accurate representations of the victim's body as it appeared at the time he observed it as required by Fleenor v. State (1987), Ind., *596 514 N.E.2d 80, 85, cert. denied (1988), ___ U.S. ___, 109 S.Ct. 189, 102 L.Ed.2d 158 and Peterson v. State (1987), Ind., 514 N.E.2d 265, 269. By the very nature of the situation, the photographs may be classified as somewhat gruesome. This does not require their exclusion from evidence. There is no showing that the gruesome nature of the photographs would tend to inflame the passions of the jurors to the extent that relevancy was outweighed. Fleenor, supra; Montano, supra.
State's Exhibits 8A-8I were photographs of the crime scene taken three days after the crime. Sergeant Cashdollar demonstrated by these photographs that the mattress on the bed had slits on the bottom side that had been turned under when the crime was discovered. The slits in the mattress matched slits in the sheet on the bed which inferred the sheet had been removed, the mattress turned over, and the sheet and pillows returned to the bed. Bloodstains also appeared on those items and on a telephone cord which had been pulled from the wall. Cashdollar did not testify these items appeared as they did on the day of the crime. He testified they were items he observed at the crime scene and they accurately represented what they purported to represent as he observed them. The slits in the mattress that had been turned over inferred there had been other attempts at stabbing the victim that missed, and the bloody telephone cord inferred the cord was pulled from the wall to prevent the victim from calling for help.
It is, of course, well settled that all evidence is relevant if it tends to prove or disprove a material fact in the case or sheds any light on the guilt or innocence of the defendant. Chinn v. State (1987), Ind., 511 N.E.2d 1000, 1004. Moreover, if a photograph serves as an aid to orient to the jury or help them understand the evidence, it is relevant. Swanigan v. State (1986), Ind., 499 N.E.2d 732, 735. Photographs depicting the crime scene are competent and relevant to assist the jurors in orienting themselves and understanding the evidence. Vincent v. State (1986), Ind., 489 N.E.2d 49, 51.
The trial court did not err in admitting Exhibits 7A-7G and 8A-8I.

VIII
Gregory argues the trial court erred in admitting testimony by Officer Armstrong as to conversations between Gregory and his father at the jail after Gregory's arrest, claiming this evidence was obtained in violation of Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
Officer Armstrong testified that while Gregory was in the booking area, his father arrived and told Gregory not to say anything. Gregory stated it was too late as he had already told them he did it. The father then told Gregory he would get him a lawyer. Officer Armstrong testified he did not question Gregory at that time.
It is well settled the procedural safeguards of Miranda apply only to what the United States Supreme Court has termed custodial interrogation. Oregon v. Mathiason (1977), 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714, 719; Munn v. State (1987), Ind., 505 N.E.2d 782, 786. Custodial interrogation refers to questions initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom or actions in any significant way. Mathiason, supra. The concept of custodial interrogation does not operate to extend the Miranda safeguards to spontaneous voluntary statements made in the presence of police officers which are not in response to questions posed by law enforcement officers. This is true even though a defendant is in custody of law enforcement officers at the time. Bugg v. State (1978), 267 Ind. 614, 618, 372 N.E.2d 1156, 1158.
The trial court is affirmed.
SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.