**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 14 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NANCY A. McCASLIN**
McCaslin & McCaslin
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOHN McMAHAN,                      )
                                   )
    Appellant-Defendant,           )
                                   )
      vs.                        )    No. 20A03-1109-CR-409
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Charles C. Wicks, Judge
The Honorable James Rieckhoff, Sr., Judge *pro tempore*
Cause No. 20D05-1104-CM-188

**March 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant John McMahan appeals from his conviction of Class A misdemeanor Invasion of Privacy.[1] McMahan argues that the admission of an unredacted protective order against him constituted fundamental error, the trial court erred in denying his mistrial motion based on allegedly impermissible testimony by a State's witness, and alleged prosecutorial misconduct amounted to fundamental error. We affirm.

## FACTS AND PROCEDURAL HISTORY

McMahan and Jennifer Snider dated for approximately one year, and, after the relationship ended, McMahan continued to contact her against her wishes. On July 1, 2010, Snider obtained an *ex parte* protective order, which indicated that Snider had shown that stalking had occurred by a preponderance of the evidence and that McMahan "represent[ed] a credible threat to the safety of [Snider] or a member of [her] household." State's Ex. 1 at 3. Following a hearing on July 26, 2010, the trial court issued a permanent protection order, in which the trial court found that McMahan "represent[ed] a credible threat to the safety of [Snider] or a member of [her] household" and that Snider had shown, "by a preponderance of the evidence, that domestic or family violence, a sex offense, or stalking ha[d] occurred sufficient to justify the issuance of this Order." State's Ex. 1 at 10. The protective order was to expire on July 26, 2012.

On April 9, 2011, Snider was on her front porch at her home in Elkhart with some family members. McMahan and his sister drove by three or four times. McMahan also

---

[1] Ind. Code § 35-46-1-51.1 (2010).

2

threatened to kill Snider and pointed his finger at her as though it were a gun. The State charged McMahan with Class A misdemeanor invasion of privacy.

At trial, unredacted copies of both the *ex parte* and permanent protective orders issued against McMahan were admitted without objection. Also, during the direct testimony of Snider's mother, a State's witness, the following exchange took place:

> Q      All right. Without getting into any specifics about their relationship, what kind of relationship did [McMahan] and your daughter … have?
>
> A      Well before he went to prison –
>
> Q      Were they – were they boyfriend and girlfriend –
> [McMahan's attorney]: Approach Your Honor.
>
> A      Yes.
> (Bench conference held)
>> THE COURT: I couldn't hear what she said.
>> [McMahan's attorney]: She said, "before he went to prison".
>> [Prosecutor]: The state agrees the jury needs to disregard.
>> [McMahan's attorney]: The jury needs to disregard and I think at this point we're obligated to ask for a mistrial. It's pretty prejudicial.
>> THE COURT: Well I think she mumbled it so bad I don't know if they heard her.
>> [State's intern]: I'm not sure they heard her.
>> THE COURT TO THE JURY: The jury will disregard that last comment by the witness.
>> [McMahan's attorney]: Will the court note my request?
>> THE COURT: Well motion denied.

Tr. pp. 119-20.

Following the presentation of evidence but before deliberations, the State informed McMahan's attorney that some members of the prosecutor's office had been seated in the courtroom during portions of the trial and that "perhaps some of them were laughing at some point during the testimony." Tr. p. 235. The six jurors were brought out individually for questioning by the attorneys and trial court. During questioning, the

3

jury members who indicated that they had seen some reaction from the gallery during certain testimony also indicated that it would not affect their ability to be impartial. McMahan did not lodge an objection to or move for a mistrial based on the behavior of the spectators.

## DISCUSSION AND DECISION

### I. Whether the Admission of the Unredacted Protective Orders Constituted Fundamental Error

The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*. Under the Indiana Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ind. Evidence Rule 404(b).

As an initial matter, McMahan concedes that he did not object to the admission of the unredacted protective orders. As such, McMahan has waived the claim for appellate

consideration. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied* (citation omitted).

McMahan, however, attempts to avoid the effect of his waiver by contending that the orders' admission constituted fundamental error. Fundamental error is "error so egregious that reversal of a criminal conviction is required even if no objection to the error is registered at trial." *Hopkins v. State*, 782 N.E.2d 988, 991 (Ind. 2003). The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. *Krumm v. State*, 793 N.E.2d 1170, 1181-82 (Ind. Ct. App. 2003). Fundamental error requires prejudice to the defendant. *Hopkins*, 782 N.E.2d at 991.

There is no dispute that the State was entitled to prove that a protective order was in effect on April 9, 2011, but McMahan contends that allowing the jury to know the conduct that gave rise to the protective order was fundamental error. We do not agree. It is common knowledge that protective orders are issued to protect a person from another who poses some sort of threat, so the jury would know that McMahan had done something objectionable to Snider in any event. We conclude that, in this case at least, knowledge of the exact nature of the conduct that gave rise to the protective order did not prejudice McMahan beyond that. As previously mentioned, the *ex parte* and permanent protective orders indicate only that McMahan had previously engaged in stalking.

5

McMahan has not established that admission of the unredacted protective orders was fundamental error.[2]

## II. Whether the Trial Court Abused its Discretion in Denying McMahan's Mistrial Motion

McMahan contends that the trial court abused its discretion in denying the mistrial motion he made following Snider's mother's testimony that he had been in prison, which the trial court directed the jury to disregard.

> We review a trial court's decision to deny a mistrial for abuse of discretion because the trial court is in "the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State*, 814 N.E.2d 253, 260 (Ind. 2004). A mistrial is appropriate only when the questioned conduct is "so prejudicial and inflammatory that [the defendant] was placed in a position of grave peril to which he should not have been subjected." *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001) (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id*.

*Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008).

Even if we assume that the trial court's instruction to ignore Snider's mother's testimony was ineffective, McMahan was not subjected to any peril. During his own testimony, McMahan admitted that he had been "incarcerated" at one point and that he had "got[ten] out of jail on 4-1 201[1]." Tr. pp. 205-06. Considering McMahan's own testimony concerning his incarceration, any error that the trial court might have made regarding Snider's mother's testimony can only be considered harmless.

---

[2] McMahan also contends that the admission of the protective orders violated Administrative Rule 9. We need not address this argument. "It is well-settled that a defendant may not raise one ground for objection at trial and argue a different ground on appeal." *Wilson v. State*, 931 N.E.2d 914, 919 (Ind. Ct. App. 2010), *trans. denied*. "The failure to raise an issue at trial waives the issue on appeal." *Id*.

**III. Whether Alleged Prosecutorial Misconduct Constituted Fundamental Error**

While acknowledging that he has waived the claim for failure to object at trial, McMahan contends that conduct during the presentation of evidence by members of the prosecutor's staff seated in the gallery amounted to fundamental error. As previously mentioned, fundamental error is "error so egregious that reversal of a criminal conviction is required even if no objection to the error is registered at trial." *Hopkins*, 782 N.E.2d at 991. No fundamental error resulted from any actions by prosecutorial staff in the gallery. First, the jurors were questioned concerning what they observed, and the two jurors who noticed the behavior stated that it would have no effect on their decisions. (Tr. 238, 240). Moreover, and more importantly, there is no indication whatsoever that any member of the jury was aware that the persons in question, even if they were seen reacting to testimony, were affiliated with the State in any way. McMahan has failed to establish that fundamental error occurred in this respect.

The judgment of the trial court is affirmed.

KIRSCH, J., and BARNES, J., concur.

7