## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2019, 8:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy Cole Searcy, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 11, 2019 <br><br> Court of Appeals Case No. 19A-CR-593 <br><br> Appeal from the Rush Superior Court <br><br> The Honorable Brian D. Hill, Judge <br><br> Trial Court Cause No. 70D01-1804-F4-307 |

**Altice, Judge.**

## Case Summary

Jeremy Cole Searcy appeals his convictions for dealing in methamphetamine, a level 4 felony, unlawful possession of a syringe, and maintaining a common nuisance, both level 6 felonies. Searcy contends that the trial court erred in denying his motion for a mistrial because it improperly admitted his videotaped statement into evidence in violation of Indiana Evid. Rule 404(b), which placed him in a position of grave peril. Searcy also claims that his conviction for maintaining a common nuisance must be vacated in light of double jeopardy concerns under Article 1, Section 14 of the Indiana Constitution.

We reverse.

## Facts & Procedural History

On March 5, 2018, a confidential informant (CI) contacted Rushville Police Department detectives and advised them that she could purchase methamphetamine from Searcy. In response, Detective Alex Shaver instructed the CI to contact Searcy and arrange for the purchase of an eight ball[1] of methamphetamine.

The CI contacted Searcy and the two agreed on a plan. Immediately prior to the controlled buy, Detective Shaver met the CI and searched her pursuant to police

---

[1] An eight ball is approximately 3.5 grams of methamphetamine.

department procedure. The CI was then equipped with audio and video recording devices and $150 in cash that had been photocopied.

[5] Detective Shaver drove the CI to a local park to meet Searcy. At some point during the drive, Searcy telephoned the CI. Detective Shaver overheard Searcy tell the CI that he was near the park and ask if she wanted to buy additional drugs because he had his "plug"[2] with him. *Transcript* at 160. The CI declined and told Searcy that she only needed the eight ball.

[6] While at the park, Detective Shaver watched the CI as she approached Searcy's 2014 Chevy Malibu. The CI leaned toward Searcy's driver's side window and handed him the cash. When Searcy asked the CI if she wanted to sample the methamphetamine, she responded, "not right now. Not while my kids are awake." *State's Exhibit* 9. Searcy then handed the CI a cigarette pack and told her that the methamphetamine was inside.

[7] Sergeant Josh Brinson, a deputy with the Rush County Sheriff's Department, was also at the park. He observed the CI walk way from Searcy's car and approach his vehicle. Once inside, the CI handed Sergeant Brinson the cigarette pack. Sergeant Brinson opened the pack and found the methamphetamine.

[8] Following the controlled buy, Searcy drove away and police officers noticed that he failed to signal his intention to change lanes numerous times. Sheriff's Deputy

---

[2] Detective Shaver testified that a "plug" commonly refers to the drug dealer's source. *Transcript* at 160.

Doug Keith initiated a traffic stop after observing these violations. Before Searcy came to a complete stop, Gary Smith, the front seat passenger, ran from the vehicle. Sergeant Keith arrested Searcy and another officer apprehended Smith. Juanita Owens was identified as a backseat passenger in Searcy's vehicle.

[9] Upon searching the car, officers located a digital scale, a plastic baggie that contained a crystal like substance, and a bag of hypodermic syringes. Smith was found in possession of a loaded hypodermic syringe, Suboxone, a controlled substance, and methamphetamine when he was searched at the jail. Searcy had eight dollars of the buy money that had been provided to the CI, and Owens possessed seventy dollars of the marked money. At some point, Searcy told Sergeant Keith that he was "just here to do a deal for somebody." *Id.* At 211. Searcy also provided a videotaped statement to the detectives that contained references to past prison sentences and prior criminal offenses.

[10] On April 13, 2018, the state charged Searcy with Count I, dealing in methamphetamine, a Level 4 felony, and Count II possession of methamphetamine, a Level 6 felony. Thereafter, on January 3, 2019, the State charged Searcy with Count III, unlawful possession of a syringe, and Count IV, maintaining a common nuisance, both Level 6 felonies.

[11] On April 16, 2018, Searcy filed a motion for discovery and a "Request for Rule 404 and 405 Evidence." *Appendix Vol. II* at 20. The motion requested, inter alia, that the State produce any and all recorded or written statements made by Searcy, and to set forth the general nature of other crimes, wrongs, or acts of Searcy or any

witness that the State intended to offer for any purpose at trial. Searcy also requested that the State set forth the specific Evid. R. 404(b) exception that it would rely upon for the admission of such evidence. Finally, Searcy requested that the State provide him with specific instances of conduct that it would use in cross-examination regarding character evidence.

[12] The trial court granted the motion, and Searcy subsequently filed a motion in limine on December 27, 2018, indicating that he believed that the State knew of evidence of other alleged misconduct that included, but was not limited to, arrests, convictions, or pending cases. Searcy further asserted that he was aware of no legitimate purpose for admitting such evidence, and that the State should be precluded from mentioning or referring to such evidence in the jury's presence.

[13] The trial court granted Searcy's motion in limine, which provided that the State and its witnesses were to "refrain from making any reference whatsoever . . . at any . . . time during the trial in any manner without first obtaining permission of the Court . . . concerning . . . [a]ny misconduct prior or subsequent, charged or uncharged, including any criminal convictions, or other prior bad acts of . . . Searcy." *Appendix Vol. II* at 55.

[14] The State responded to Searcy's motion for discovery on January 3, 2019, indicating that it intended to use Searcy's "prior criminal acts that were shown on the criminal record that it had previously submitted . . . for all purposes allowable under [the] law." *Id*. at 65. The State also indicated that it would use Searcy's

prior arrests and convictions to rebut his testimony and evidence of good character that might be offered.

[15] Searcy's jury trial commenced on January 15, 2019. At the close of the State's case-in-chief, it sought to admit Searcy's videotaped statement into evidence. Searcy lodged an objection on the grounds of hearsay and further commented that "there [is] a motion in limine on file that it may very well violate." *Transcript Vol. III* at 21-22. The State acknowledged that the interview contained "incriminating statements," yet it was unaware of "any specific thing that would violate the motion in limine." *Id.* at 22. The trial court noted Searcy's continuing objection and allowed Searcy's videotaped statement to be played for the jury.

[16] At various points during the videotape, the jury learned of an outstanding warrant for Searcy because he had violated probation in another case, that Searcy abused controlled substances, smoked marijuana, used methamphetamine the day before his arrest and on other occasions, and used suboxone on the day of arrest. The videotape also revealed that Searcy was being investigated by the drug task force in another case, that he had spent nearly seventeen years in prison over the years, and that he vowed to continue abusing illegal substances if he was released from jail.

[17] At the conclusion of the video, Searcy moved for a mistrial outside of the jury's presence. Searcy argued that the information in the recording repeatedly violated the motion in limine because it contained improper references to "all kinds of behavior," including assertions that Searcy was "high." *Transcript Vol. III* at 50.

Searcy also pointed out that the State had failed to request permission from the trial court before offering the alleged improper Evid. R. 404(b) evidence.

[18] In response, the State contended that the evidence was admissible because Searcy's statements were voluntary, they established his knowledge of the charged offenses, they were relevant, and they were not being offered as evidence of guilt. The State, however, requested the trial court to issue a limiting instruction if it determined that the order on the motion in limine had been violated. The trial court denied Searcy's motion for a mistrial and gave no limiting instruction. The State offered no further evidence and rested its case-in-chief.

[19] The jury found Searcy guilty as charged, and the trial court entered a judgment of conviction on all counts. The Court subsequently vacated the methamphetamine possession conviction (Count II) on double jeopardy grounds. On February 11, 2019, the trial court sentenced Searcy to the Indiana Department of Correction for an aggregate twelve-year term of imprisonment. Searcy now appeals.

## Discussion and Decision

### I. Waiver

[20] Before proceeding to the merits of this appeal, we initially address the State's contention that Searcy has waived his claim of error regarding the mistrial. The State claims that Searcy made only a general objection at trial as to the

admissibility of the videotaped statement, and the earlier grant of his motion in limine failed to properly preserve the issue.

[21] The State correctly observes that a motion in limine is not a final ruling on the admissibility of evidence. *Sharp v. State*, 534 N.E.2d 708, 713 (Ind. 1989). Only trial objections, not motions in limine, effectively preserve claims of error for appellate review. See *Brown v. State*, 783 N.E.2d 1121, 1125 (Ind. 2003). The failure to object at trial to the admission of the evidence results in waiver of the error, notwithstanding a prior motion in limine. Id. Hence, a party must contemporaneously reassert the objection at trial so as to allow the trial court an opportunity to make a final ruling on the matter in the proper context. *Vehorn v. State*, 717 N.E.2d 869, 872 (Ind. 1999). The objection must be sufficiently specific to alert the trial judge fully of the legal issue. *Moore v. State*, 669 N.E.2d 733, 742 (Ind. 1996).

[22] As discussed above, the trial court granted Searcy's pretrial motion in limine that prohibited the State from referencing "any misconduct prior or subsequent, charged or uncharged, including any criminal conviction, or other prior bad acts . . . of Searcy." *Appendix Vol. II* at 20, 55. When the State moved to admit Searcy's videotaped statement at trial, Searcy immediately objected and argued that the admission of the statement would violate the order on his motion in limine. In our view, Searcy's specific reference to potential Evid. R. 404(b) violations in his objection was sufficient to preserve the claimed error for review. Thus, the State's claim that Searcy has waived the issue fails.

## II.  Mistrial

[23] Proceeding to the merits of the appeal, Searcy claims that the trial court abused its discretion in denying his motion for a mistrial.  Specifically, Searcy argues that the videotaped statement was riddled with instances of prior bad acts, misconduct, and improper character evidence in violation of Evid. R. 404(b).  Thus, given the quantity and incriminating quality of the statements, and the fact that the trial court gave no limiting instruction or admonishment, Searcy claims that the admission of this evidence placed him in a position of grave peril and, therefore, a mistrial was warranted.

[24] "A mistrial is an 'extreme remedy' that should be used only when no other curative measure will rectify the situation."  *Moore v. State*, 652 N.E.2d 53, 57 (Ind. 1995).  In reviewing the denial of a motion for a mistrial, the defendant must demonstrate that the conduct complained of was both in error and had a probable persuasive effect on the jury's decision.  *Pierce v. State*, 761 N.E.2d 821, 825 (Ind. 2002).  More specifically, the appellant must establish that the questioned conduct "was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected."  *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989).  The gravity of the peril is measured by the conduct's probable persuasive effect on the jury, not the degree of impropriety of the conduct.  *Id*.  A trial judge's discretion in determining whether to grant a mistrial is afforded great deference, because the trial judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury.  *Mickens v. State* 742 N.E.2d

927, 929 (Ind. 2001). Thus, we review the trial court's decision solely for an abuse of discretion. *Id.*

[25] Evid. R. 404(b) provides that

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses; Notice in a Criminal Case*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, [or] identity.

[26] In this case, the State asserts that Searcy's videotaped statements were admissible because they established proof of Searcy's knowledge of the charged offenses. We note, however, that many of Searcy's acknowledgments and admissions, as well as statements made by the interviewing detective, had nothing to do with methamphetamine. Indeed, the jury heard evidence that there was an outstanding arrest warrant for Searcy on a probation violation that stemmed from a prior conviction, that Searcy illegally purchased and possessed suboxone and marijuana, and that he had spent almost seventeen years in prison. Moreover, the admission of the videotaped statement was offered after the State had already presented the majority of its evidence to establish Searcy's guilt. In fact, the numerous incriminating statements, admissions, and acknowledgments on the videotape were the last bits of evidence that the jury heard prior to deliberating. Further, the trial court provided no curative measure, such as a limiting instruction that would

have admonished the jury to consider the incriminating evidence only for a particular purpose set out in Evid. R. 404(b)(2).

[27] In light of these circumstances, we cannot agree with the State that the probable persuasive effect of this evidence on the jury was minimal. Rather, it is apparent to us that Searcy's videotaped statement contained numerous Evid. R. 404(b) violations that may have had a significant effect on the jury. Therefore, we must conclude that the incriminating nature of the evidence contained in the videotape was so prejudicial and inflammatory to Searcy that it placed him in a position of grave peril to which he should not have been subjected. The trial court erred in denying Searcy's motion for a mistrial. Thus, his convictions must be reversed.[3]

---

[3] Although we reverse Searcy's convictions for the reasons discussed above, we briefly address Searcy's alternative argument for reversal, as it is likely to arise again on retrial. We agree with Searcy that his convictions for maintaining a common nuisance and dealing in methamphetamine would not stand in light of double jeopardy concerns. We find instructive this Court's opinion in *Hunter v. State,* 72 N.E.3d 928, 935 (Ind. Ct. App. 2017), *trans. denied,* where we vacated the defendant's conviction for maintaining a common nuisance on double jeopardy grounds under the "same evidence test," pursuant to Article 1, Section 14 of the Indiana Constitution. In *Hunter,* nothing was articulated in the charging information, the evidence at trial, jury instructions, or the State's closing argument that separated the defendant's maintaining a common nuisance charge from the evidence presented that was used to establish the possession and dealing in cocaine offenses. Thus, we concluded that there was a reasonable possibility that the jury used the same evidentiary facts to establish the elements of all charged offenses, and we vacated the conviction with the less severe penal consequences, i.e., the maintaining a common nuisance conviction.

Our review of the record in this case establishes that there is a reasonable possibility that the jury used the same evidentiary facts to prove the essential elements of all charged offenses, similar to the circumstances in *Hunter.* Indeed, it is apparent that the jury "may have latched on to *exactly* the same facts for both convictions." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008) (emphasis added). Nothing was presented to establish Searcy's maintaining a common nuisance charge, other than evidence that he used a vehicle when committing the other charged offenses. Hence, the actual evidence test would preclude Searcy's conviction for maintaining a common nuisance on double jeopardy grounds. *See Hunter,* 72 N.E.3d at 935.

[28] Judgment reversed.

Brown, J. and Tavitas, J., concur.